1    KEVIN V. RYAN (CSBN 118321)
     United States Attorney
2

3    EUMI L. CHOI (WVSBN 0722)
     Acting Chief, Criminal Division

4    JEFFREY D. NEDROW (CSBN 161299)
     CARTER M. STEWART (CSBN 196426)
5    Assistant United States Attorney

6        150 Almaden Boulevard, Suite 900
        San Jose, California 95113
7        Telephone: (408) 535-5045

8    Attorneys for Plaintiff

*RECEIVED*

*OCT 2 6 2004*

*FILED*

*NOV 2 2004*

*ORIGINAL*

RICHARD [...]
CLERK [...]
NORTHERN DISTRICT [...] CALIFORNIA

9

10            IN THE UNITED STATES DISTRICT COURT

         FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

| | | |
|---|---|---|
| 12   UNITED STATES OF AMERICA, | ) | CR No.: 04-0044-SI |
| 13         Plaintiff, | ) ) | UNITED STATES' SUBMISSION OF |
| 14   VICTOR CONTE, JR., JAMES | ) ) | SEALED EXHIBITS IN SUPPORT OF UNITED STATES' OPPOSITION TO |
|      VALENTE, et. al., | ) | DEFENSE MOTIONS FILED ON |
| 15         Defendants. | ) ) | BEHALF OF DEFENDANTS CONTE AND VALENTE |
| 16 | ) | |

17           Date: December 1, 2004
           Time: 10:00 a.m.
18           Location: Courtroom # 10
           The Honorable Susan Illston

19           UNDER SEAL



1  KEVIN V. RYAN (CSBN 118321)
   United States Attorney

2
   EUMI L. CHOI (WVSBN 0722)
3  Acting Chief, Criminal Division

4  JEFFREY D. NEDROW (CSBN 161299)
   CARTER M. STEWART (CSBN 196426)
5  Assistant United States Attorney

6      150 Almaden Boulevard, Suite 900
       San Jose, California 95113
7      Telephone: (408) 535-5045

8  Attorneys for Plaintiff

9
                    IN THE UNITED STATES DISTRICT COURT
10
                   FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12  UNITED STATES OF AMERICA,          )   CR No.: 04-0044-SI
                                       )
13              Plaintiff,             )   UNITED STATES' SUBMISSION OF
                                       )   SEALED EXHIBITS IN SUPPORT OF
14  VICTOR CONTE, JR., JAMES           )   UNITED STATES' OPPOSITION TO
    VALENTE, et. al.,                  )   DEFENSE MOTIONS FILED ON
15                                     )   BEHALF OF DEFENDANTS CONTE
                Defendants.            )   AND VALENTE
16  _____)

                                           Date: December 1, 2004
17                                         Time: 10:00 a.m.
                                           Location: Courtroom # 10
18                                         The Honorable Susan Illston

19

20      The United States herein respectfully submits its sealed exhibits in support of its Opposition

21  to the motions filed by the defense. Exhibits A-J are submitted in support of the opposition to Conte

22  and Valente's motion to suppress. Exhibit K is submitted in connection with the motions filed by

23  defendants related to allegations of outrageous government misconduct and media leaks.

24  DATED: 10/29/04                         Respectfully submitted,

25                                          KEVIN V. RYAN
                                            United States Attorney
26

                                            JEFFREY D. NEDROW
                                            CARTER M. STEWART
                                            Assistant United States Attorneys

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | June 10, 2003 Search Warrant Affidavit for E-mail Accounts |
| B | July 25, 2003 Search Warrant Affidavit for E-mail Accounts |
| C | August 29, 2002 Grand Jury Subpoena |
| D | September 19, 2002 Grand Jury Subpoena |
| E | February 12, 2003 Grand Jury Subpoena |
| F | March 13, 2003 Grand Jury Subpoena |
| G | May 19, 2003 Grand Jury Subpoena |
| H | May 19, 2003 Grand Jury Subpoena |
| I | December 22, 2003 Grand Jury Subpoena |
| J | December 22, 2003 Grand Jury Subpoena |
| K | July 7, 2004 Declaration of Agent Jeff Novitzky |

A

AO 93 (Rev. 8/95)  Search Warrant

# United States District Court

**NORTHERN** ~~FILED~~

**DISTRICT OF** **CALIFORNIA**

In the Matter of the Search of

(Name, address or brief description of person or property to be searched)

The e-mail accounts:
1) send2victor@yahoo.com and
2) balcovp@yahoo.com,
both located at
Yahoo
701 1st Avenue
Sunnyvale, California

Jun 18  10 30 AM '03

**SEARCH WARRANT**

CASE NUMBER: ~~SEALED BY ORDER OF COURT~~

U.S. DIST COURT
NO. DIST OF CA, S.J.

03    117 HRL

TO: _____ Jeff Novitzky, Special Agent, IRS-CI _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Jeff Novitzky, Special Agent, IRS-CI _____ who has reason to

Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

The e-mail accounts:
1) send2victor@yahoo.com and
2) balcovp@yahoo.com,
both located at 701 1st Avenue, Sunnyvale, California

in the _____ Northern _____ District of _____ California _____ there is now

concealed a certain person or property, namely (describe the person or property)

Please see Attachment A.

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ 6/12/03 _____

Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night as I find reasonable cause has been established)~~ and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _____ as required by law.

U.S. Judge or Magistrate Judge

6/10/03 at 4:30 PM     at     San Jose CA

Date and Time Issued                              City and State

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                 Signature of Judicial Officer

**ATTACHMENT A**

**I. Search Procedure**

a. The search warrant will be presented by law enforcement agents to the personnel of Yahoo located at 701 First Avenue, Sunnyvale, California. Yahoo personnel will be directed to isolate those accounts and files described in Section II below;

b. In order to minimize any disruption of computer service to innocent third parties, Yahoo employees will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c. Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to law enforcement agents who need not be present during the duplication of the files;

d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from the Yahoo employees and then identify and copy only the information contained in those accounts and files which is authorized to be further copied as described in Section III below; and

e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

**II. Files and Accounts to be Copied by Yahoo Employees**

a. All electronic mail stored and presently contained in, or on behalf of, the following electronic mail addresses and/or individual accounts: **send2victor@yahoo.com** and

ATTACHMENT A     Page 1 of 3

**balcovp@yahoo.com.**

b.      All existing printouts from original storage of all of the electronic mail described above in Section II (a);

c.      All transactional information of all activity of the electronic mail addresses and/or individual accounts described above in Section II(a), including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

d.      All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above in Section II(a), including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, passwords, and detailed billing records; and

e.      All records indicating the services available to subscribers of the electronic mail addresses and/or individual accounts described above in Section II(a).

### III.  Information to be Further Copied by Law Enforcement Personnel

a.      The following email from **send2victor@yahoo.com** and **balcovp@yahoo.com.**

(1)     Electronic mail discussing athletic performance enhancing drugs, drug prices, drug administration methods, drug suppliers, the distribution and administration of performance enhancing drugs and clients who use performance enhancing drugs.

(2)     Electronic mail discussing performance enhancing drug tests, including methods and techniques used to defeat performance enhancing drug tests and results from performance enhancing drug tests conducted.

(3)     Electronic mail discussing any financial matters involving Balco Labs,

SNAC Systems, Victor Conte, James Valente, Emeric Delczeg, Greg

Anderson or any other individual associated with those entities and

individuals including employees, vendors, suppliers and clients.

b.      Existing printouts from original storage of those items described in Section III(a)

above; and

c.      All of the records and information described above in Sections II(c), (d), and (e).

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

## NORTHERN
_____ DISTRICT OF _____

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
**CALIFORNIA** SAN JOSE

JUN 1 0 2003

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

The e-mail accounts:
1) send2victor@yahoo.com and
2) balcovp@yahoo.com, both located at
Yahoo
701 1st Avenue
Sunnyvale, California

**SEALED BY ORDER**
**OF COURT**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

03  117  HRL

I _____ Jeff Novitzky, IRS-CI _____ being duly sworn depose and say:

I am a(n) _____ Special Agent, IRS-CI _____ and have reason to believe
                                    Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)
The e-mail accounts: 1) send2victor@yahoo.com and 2) balcovp@yahoo.com, both located at
701 1st Avenue Sunnyvale, California

in the _____ Northern _____ District of _____ California _____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

Please see Attachment A

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence of the commission of a criminal offense, th fruits of the crime, and property designed for or intended for us or
which is or has been used as a means of committing a criminal offense,

concerning a violation of Title _____ 18, 21 _____ Section(s) _____ 1341, 1956 and 841

The facts to support a finding of Probable Cause are as follows:

Please see attached affidavit.

Continued on the attached sheet and made a part hereof.          ☒ Yes    ☐ No

Approved
As To
Form:
AUSA:  Jeffrey Nedrow                                    Signature of Affiant

Sworn to before me, and subscribed in my presence

6/10/03                                           at    San Jose, California

Date                                                        City and State

HOWARD R. LLOYD, U.S. Magistrate Judge

Name and Title of Judicial Officer                          Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT JEFF NOVITZKY IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jeff Novitzky, being first duly sworn, hereby depose and state as follows:

### Introduction

1.    This affidavit is submitted in support of a search warrant for electronic mail accounts controlled by the electronic mail provider Yahoo. Yahoo is headquartered at 701 1st Avenue, Sunnyvale, California. The Yahoo accounts to be searched are **send2victor@yahoo.com** and **balcovp@yahoo.com**, both of which are further described in the following paragraphs and in Attachment A. As set forth herein, there is probable cause to believe that on the computer system of Yahoo, there exists evidence, fruits and instrumentalities of violations of Title 21 U.S.C. § 841 (distribution of anabolic steroids, a Schedule III controlled substance), Title 18 U.S.C. § 1341 (mail fraud), and the related money laundering of the illicit profits from those violations in violation of Title 18 U.S.C. § 1956 (money laundering).

### I. Affiant's Background

2.    I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), and have been so employed since 1993. During my ten (10) years with IRS-CI, I have conducted and/or participated in hundreds of criminal investigations involving income tax violations, money laundering violations and currency violations. I have participated in the execution of numerous search warrants and have written affidavits in support of search

1 of 51

Affidavit in Support of Search Warrant

warrants on twenty-one (21) different locations. I have also written affidavits for seizure warrants on at least eleven (11) assets.

3. In my training and experience, I have learned that Yahoo is a company that provides e-mail service and that stores electronic communications, including opened and unopened e-mail for their subscribers on their computers. I am aware that computers located at Yahoo contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrants seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

## II. Search Procedure

4. In order to ensure that agents search only those computer accounts and/or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo to assist agents in the execution of this warrant. To further ensure that agents executing this warrant search only those computer accounts and/or files described in Attachment A the following procedures will be implemented:

a. The officer executing this warrant shall serve the warrant upon Yahoo's headquarters at the location specified in the warrant;

b. In order to minimize any disruption of computer service to innocent third parties, the officer executing this warrant shall permit Yahoo, as the custodian of the computer files described in Attachment A, to locate the files, copy them onto

Affidavit in Support of Search Warrant

removable electronic storage media or print them out as paper copies, and deliver the copies to the officer, who need not be present during this process. Yahoo employees will create an exact duplicate of the computer accounts and files described in Attachment A;

c. Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to law enforcement agents;

d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

### III. Background Regarding Computers, the Internet, and E-Mail

5. The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

Affidavit in Support of Search Warrant

6. I have had both training and experience in the investigation of computer-related crimes. Based on my training, experience and knowledge, I know the following:

a. The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities. In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The world wide web ("www") is a functionality of the Internet which allows users of the Internet to share information;

b. With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world. This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods; and

c. E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users. When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

Affidavit in Support of Search Warrant

## IV. Yahoo

7.     Based upon my training and experience, and based further on

discussions I have had with IRS-CI Special Agent Mike Farrelly, a computer

investigative specialist (CIS), I have learned the following about Yahoo:

a.     Yahoo is a global Internet communications, commerce and media

company, offering among other services, Internet e-mail hosting.

b.     Yahoo stores copies of sent and received e-mails on their

computer servers for periods of time after the e-mails are sent or received

by Yahoo e-mail account subscribers.

## VI. Stored Wire and Electronic Communication Access

8.     Title 18, United States Code, Chapter 121, Sections 2701 through

2711, is entitled "Stored Wire and Electronic Communications and Transactional

Records Access."

a.     Title 18, United States Code, Section 2703(a) provides, in part:

A governmental entity may require the disclosure by a provider of
electronic communication service of the contents of a wire or electronic
communication, that is in electronic storage in an electronic
communications system for one hundred and eighty days or less, only
pursuant to a warrant issued using the procedures described in the Federal
Rules of Criminal Procedure by a court with jurisdiction over the offense
under investigation or equivalent State warrant. A governmental entity may
require the disclosure by a provider of electronic communications services
of the contents of a wire or electronic communication that has been in
electronic storage in an electronic communications system for more than
one hundred and eighty days by the means available under subsection (b)
of this section.

b. Title 18, United States Code, Section 2703(b) provides, in part:

Affidavit in Support of Search Warrant

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service –

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c.     The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. § 2703(c). No notice to the subscriber or customer is required. 18 U.S.C. § 2703(c)(2).

d.     Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter –

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section;

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system; and

6 of 51

Affidavit in Support of Search Warrant

(3) the term 'court of competent jurisdiction' has the meaning assigned by section 3127, and includes any Federal court within that definition, without geographical boundaries.

e.   Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means --

(A) any ternporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## VII. Probable Cause

9.   This case was initiated in August of 2002, based upon the

development of information alleging that numerous "world-class" professional

athletes are illegally receiving anabolic steroids and other athletic performance-

enhancing drugs and having their steroid intake monitored by persons

7 of 51

Affidavit in Support of Search Warrant

associated with Balco Laboratories Inc., a blood testing laboratory located at 1520 Gilbreth Road in Burlingame, California. This information included allegations that VICTOR CONTE JR., the owner and CEO of Balco Laboratories Inc., JAMES VALENTE, the vice president of Balco Laboratories, GREG ANDERSON, a personal trainer in the Burlingame, California area, and EMERIC DELCZEG, a master's division bodybuilder, are all involved in illegal anabolic steroid distribution and administration to several well known professional athletes.

10.    There is probable cause to believe that CONTE, VALENTE, ANDERSON, and DELCZEG are possessing with intent to distribute, and distributing, anabolic steroids in violation of federal law. Anabolic steroids are a Schedule III controlled substance. The distribution of Schedule III drugs is illegal except when such drugs are dispensed by a licensed medical doctor within the bonds of a professional medical practice. Sections 802 and 841. 21 U.S.C. Section 802(41)(A) defines "anabolic steroid" as "any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than estrogens, progestins and corticosteroids) that promote muscle growth . . ." Section 802(41)((A) includes a list of 27 specific substances included within the definition, and concludes with a provision that broadly includes "any salt, ester, or isomer of a drug or substance described or listed in this paragraph if that salt, ester, or isomer promotes muscle growth."   It is a violation of federal narcotics laws to possess with intent to distribute and distribute anabolic steroids. 21

Affidavit in Support of Search Warrant

U.S.C. Section 841(b)(1)(D). Hereafter in this affidavit, the term "steroids" refers to anabolic steroids which fall under the statutory definition provided in Section 802(41)((A).

11.     In addition, as described below, probable cause exists to believe that Balco Laboratories Inc., CONTE and VALENTE are engaged in a mail fraud scheme specifically by marketing a scheme to distribute and administer drugs that mask the presence of steroids in the blood and urine of athletes, and fraudulently enable these athletes to pass drug tests administered by their sports' governing bodies. As described in more detail in this affidavit, Balco Laboratories, CONTE and VALENTE use the drug epitestosterone for this purpose. An invoice, at least two business checks and three charges to VALENTE's Balco Labs' American Express account exist and infer that Balco Laboratories, CONTE and VALENTE caused the mailing of epitestosterone on several occasions to the Balco Laboratories location at 1520 Gilbreth Road in Burlingame, California.

## V. Investigation of Balco Laboratories

### A. Investigative Background

12.     This case was initiated in August of 2002, based upon the development of information alleging that Balco Laboratories, a blood testing laboratory located at 1520 Gilbreth Road, Burlingame, California, is illegally distributing anabolic steroids to professional athletes and monitoring their steroid intake. This information included allegations that VICTOR CONTE JR.,

Affidavit in Support of Search Warrant

the owner and CEO of Balco Laboratories Inc., JAMES VALENTE, the vice

president of Balco Laboratories, GREG ANDERSON, a personal trainer in the

Burlingame, California area, and EMERIC DELCZEG, a master's division

bodybuilder, are all involved in illegal anabolic steroid distribution and

administration to several well known professional athletes through Balco

Laboratories.

13.    This affidavit will present probable cause that CONTE,

VALENTE, ANDERSON, and DELCZEG are possessing with intent to distribute,

and distributing, anabolic steroids in violation of federal law. Anabolic steroids

are a Schedule III controlled substance. The distribution of Schedule III drugs is

illegal except when such drugs are dispensed by a licensed medical doctor

within the bounds of a professional medical practice. Title 21 U.S.C. Section

802(41)(A) defines "anabolic steroid" as "any drug or hormonal substance,

chemically and pharmacologically related to testosterone (other than estrogens,

progestins and corticosteroids) that promotes muscle growth . . ." Section

·802(41)((A) includes a list of 27 specific substances included within the

definition, and concludes with a provision that broadly includes "any salt, ester,

or isomer of a drug or substance described or listed in this paragraph if that salt,

ester, or isomer promotes muscle growth."   It is a violation of federal narcotics

laws to possess with intent to distribute and distribute anabolic steroids under

Title 21 U.S.C. Section 841(b)(1)(D) unless prescribed by a licensed medical

doctor within the bounds of a professional medical practice.  Hereafter in this

Affidavit in Support of Search Warrant

affidavit, the term "steroids" refers to anabolic steroids which fall under the statutory definition provided in Section 802(41)((A).

14. In addition, as described below, probable cause exists to believe that Balco Laboratories Inc., CONTE and VALENTE are engaged in a mail fraud scheme specifically by marketing a scheme to distribute and administer drugs that mask the presence of steroids in the blood and urine of athletes, and fraudulently enabling these athletes to pass drug tests administered by their sports' governing bodies. As described in more detail in this affidavit, probable cause exists that Balco Laboratories, CONTE and VALENTE use the drug epitestosterone for this purpose. Several documents were obtained in this investigation indicating that Balco Laboratories, CONTE and VALENTE caused the mailing of epitestosterone on multiple occasions to the Balco Laboratories location at 1520 Gilbreth Road in Burlingame, California.

## B. BALCO LABORATORY BACKGROUND

15. I have received information from the State of California, Department of Health Services that Balco Laboratories Inc., located at 1520 Gilbreth Road in Burlingame, California, is a registered laboratory testing facility, authorized by the State of California to conduct routine chemistry, toxicology and trace metal testing of blood and urine. According to State Department of Health Services representative Bea O'Keefe, VICTOR CONTE JR. is the registered owner of the facility and Dr. Brian D. Halevie-Goldman is the registered medical director of the laboratory. Internet research has revealed that Dr. Halevie-

11 of 51

Affidavit in Support of Search Warrant

Goldman is a psychiatrist specializing in child and adolescent psycopharmacology. He currently works for the "Amen Clinic" in Fairfield, California, a private medical clinic that specializes in innovative diagnosis and treatment for a wide variety of neuropsychiatric, behavioral and learning problems for children, teenagers and adults.

16.    On January 29, 2003, I spoke with Jaime Nazario, an employee of the Drug Enforcement Administration (DEA) in San Jose, California. Nazario ran the names of VICTOR CONTE JR. and Dr. Brian Halevie-Goldman through an indices of authorized and registered controlled substance distributors that the DEA maintains. Nazario informed me that neither CONTE nor Dr. Halevie-Goldman are currently authorized or registered with the DEA to distribute or prescribe controlled substances. Nazario further informed me that it is illegal for a doctor or anyone else to distribute or prescribe a controlled substance without authorization and registration with the DEA.

17.    SNAC System Incorporated is another business operated by CONTE that is operated from the same location as Balco Laboratories Inc. As advertised on its web-site, SNAC Systems Inc., "is a revolutionary mineral and trace element supplementation program designed to maximize absorption and utilization." The web-site professes that "rigorous exercise and stress result in significant body losses of specific minerals and trace elements" and that SNAC System products can help replenish those minerals and trace elements and help individuals achieve better performance "in the workplace, as well as in the gym

Affidavit in Support of Search Warrant

and the athletic field." Through Internet research and the examination of discarded trash from Balco Laboratories and SNAC Systems Inc., I have learned that SNAC System sells and markets several legal nutritional supplements that they allege help to increase athletic performance and recovery.

## C. BALCO & VICTOR CONTE INTERNET INFORMATION

18.     A web-site at "Balcolab.com" was located which contains information and is a "home-page" for the business Balco Laboratories Inc. in Burlingame, California. The web-site states that Balco is in the business of "High tech nutritional assessment for Olympic athletes, weekend warriors and even business executives." The site goes on to explain that through the use of a machine called the ICP (inductively coupled plasma), selected essential minerals, trace elements and toxic metals in a person's blood and urine can be analyzed and deficiencies can be determined. The web-site further describes that based upon those deficiencies, supplements can be recommended to those people, the intake of which will increase athletic performance.

19.     The site contains a link to "Balco's Database of World Class Olympic and Professional Athletes". In this link, approximately fifty (50) professional athletes are claimed to be Balco Labs clients, including athletes from various professional sports ranging from the National Football League, National Basketball Association, as well as athletes competing in professional bodybuilding, professional tennis, swimming and track and field. The site also

13 of 51

Affidavit in Support of Search Warrant

includes an e-mail contact with Balco at the e-mail address of

**conte@balcolab.com**.

## D. VICTOR CONTE NEWSGROUP POSTINGS

20.    Based upon an Internet query of the e-mail address

**conte@balcolab.com**, several postings with a return e-mail address of

**conte@balcolab.com** to a "Google" Internet newsgroup entitled

"misc.fitness.weights" were located.  These posts were made over a several

year period from 1999 through 2003.  A review of the contents of the

newsgroup "misc.fitness.weights" revealed that the majority of postings involve

the topics of weightlifting, bodybuilding, nutrition and steroids.  In each of the

several dozen postings that I located from **conte@balcolab.com**, the author of

the text of each message is listed as "Victor", "Victor Conte" or "VC".   In these

postings, CONTE writes on several topics, many of which corroborate much of

the information developed in this investigation, specifically CONTE and Balco's

associations with professional athletes and illegal athletic performance-

enhancing drugs.  Among these postings from CONTE from

**conte@balcolab.com** are the following statements and references to athletes

and performance enhancing drugs:

| Date of Posting | Statement |
|---|---|
| April 29, 2001 | Dear Bryce:  The specific question that I have repeatedly asked Lyle is what world class athletes have you "provided consultation" for?  Go back and read my post.  I have "provided testing and consultation" and been paid a fee for such services |

14 of 51

Affidavit in Support of Search Warrant

to many elite athletes such as Marion Jones, Barry Bonds, John Elway, Dan Marino, Bill Romanowski, Bryce Paup, Michael Chang, the entire Denver Broncos Super Bowl Championship teams, the entire Miami Dolphins football team, the entire Seattle Super Sonics basketball team, etc., plus many pro bodybuilders including Milos Sarcev and Flex Wheeler just to name a couple. There are many, many more if you would like me to post their names. Am I able to quantify the benefit of my services to these athletes? No, I cannot. However, most of these athletes do continue to use my services year after year, so they must feel they are getting benefit.

April 13, 2001

Dear Bryce: The "in crowd" that I am associated with includes Ronnie Coleman, Flex Wheeler, Milos Sarcev, Marion Jones, Barry Bonds and many more elite Olympic and professional athletes.

March 19, 2000

Dear Will: I would appreciate your feedback regarding the cost issue. As you know, oxandrolone1 comes in 2.5 mg tablets, which cost somewhere between $1 and $4.80 (by prescription) per tablet. That means taking 150 mg per day (60 tablets) would cost somewhere between $60 and $288 per day. Who do you know that is willing to spend $1,800 to $8,640 per month on taking oxandrolone at 150 mg per day! Is it available for something less than $1.00 per tablet? Maybe I'm missing something.

March 18, 2000

Dear Mr. Roberts: What is the basis of your statement "oxandrolone at a sufficiently high dose, e.g. 150 mg/day, increases aggression pretty comparably to most stuff and gives reasonable but not outstanding mass gains?" Where is the published science to support this statement? There are 122 published oxandrolone studies to be found using medline.

---

1 Oxandrolone is an oral anabolic steroid and classified as a Schedule III controlled substance under Title 21 U.S.C. § 802.

Affidavit in Support of Search Warrant

March 13, 1999                Dear Ed: Are you aware that your baseline
                              testosterone level of 256 ng/dL is a deficient level
                              of total testosterone. The normal range used by
                              Quest Diagnostics Laboratories (one of the most
                              credible labs in the US for measuring testosterone
                              levels) is 260 ng/dL to 1,000 ng/dL. This is a 2
                              standard deviation range and represents the center
                              95 out of 100 healthy males.

### E. Media Articles

21.    Media outlet archives were queried through the Internet in order

to gather further background evidence on CONTE and BALCO LABS. Several

articles were discovered relating to VICTOR CONTE's appearance on behalf of

C.J. HUNTER, a world class shot put thrower who is the former husband of

Olympic Gold Medalist sprinter MARION JONES, and whom CONTE claims in

the aforementioned newsgroup postings is a client of his as well. HUNTER

tested positive for the performance-enhancing drug nandrolone, an anabolic

steroid, shortly before the 2000 Summer Olympics in Sydney, Australia, while

under the care of his nutritionist, VICTOR CONTE. According to several media

articles located on the Internet, in a news conference that took place in Australia

preceding the 2000 Summer Olympics, HUNTER introduced VICTOR CONTE

JR. as his nutritionist. CONTE stated during the press conference that "CJ was

not using the anabolic steroid nandrolone. The positive test was the result of an

iron supplement he was taking."

22.    A "Flex Magazine" article entitled "Barry's Bond With Muscle"

details a relationship between San Francisco Giants outfielder BARRY BONDS,

VICTOR CONTE and GREG ANDERSON. The article details BONDS'

Affidavit in Support of Search Warrant

progression to the single-season home run record of 73 achieved in 2001. The article states that "The first key move was hooking up with VICTOR CONTE, noted nutrition expert-cum-chemist based at Balco Laboratories in Burlingame, California. 'I met with Barry before spring training in 2001 and adjusted his nutritional supplementation regimen to maximize muscle recovery, absorption of minerals and protein synthesis,' says Conte." The article further states "Besides working with Conte, Bonds collaborated with personal trainer GREG ANDERSON on a weight training program geared to the specific needs of a baseball player."

23.     A Muscle and Fitness Magazine article entitled "The King of Swing" from the June 2003 issue, details the involvement of CONTE and ANDERSON with Barry Bonds' fitness and nutrition. The article states that since the winter of 2000, Bonds has worked closely with San Francisco-based nutritional consultant VICTOR CONTE of Balco Laboratories and that Greg Anderson, his personal trainer, has worked with Bonds for the last five (5) years. In the article, Bonds states, "Victor will call me to make sure I'm taking my supplements, and my trainer Greg will sit near my locker and stare at me if I don't start working out right away. I have these guys pushing me."

24.     An interview of CONTE was published in "Testosterone" magazine, a publication that deals primarily with steroids and steroid issues. In the article, published on November 13, 1998, CONTE is asked whether or not he recommends growth hormone supplementation for older athletes. Human

Affidavit in Support of Search Warrant

growth hormone, while not a controlled substance under Title 21, is illegal to administer without a prescription under State law. I have learned in my investigation that human growth hormone is often used by bodybuilders and athletes in conjunction with anabolic steroids in order to gain muscle mass and strength. CONTE responded to the growth hormone question by stating "I don't condone the use of anabolic steroids or growth hormone. However, I know a number of athletes who use growth hormone, and most of them are reporting tremendous benefits. A few NFL players who have been caught using anabolic steroids have switched to using growth hormone by itself. Some of the older players in their mid-30's are also using growth hormone."

### F. Examination of Discarded Trash

25.     Since September 3, 2002, I have performed a weekly examination of the discarded garbage of Balco Laboratories Inc., located at 1520 Gilbreth Road in Burlingame, California. I have regularly retrieved the discarded garbage from a public-access parking lot where it is placed for pickup. Over the past several months, I have retrieved numerous items from the discarded garbage of Balco Labs that corroborate the allegations of illegal anabolic steroid distribution by Balco Laboratories and CONTE to professional athletes. A partial listing of items retrieved from the discarded trash of Balco Laboratories at 1520 Gilbreth Road in Burlingame, California, along with the date the evidence was retrieved, is as follows:

•       Torn, empty box of multiple vials of Serostin, a human growth hormone (9/3/02).

Affidavit in Support of Search Warrant

- Torn, empty box of 200 mg vial of testosterone2 (9/10/02).

- Empty pill container of Oxandrin3 (11/18/02).

- At least fifty (55) empty, one-use syringe wrappers in various sizes (9/3/02 through 5/19/03).

- Fed Ex International Air Waybill detailing a shipment of "prescription drug personal medication" from a pharmacy in Ontario, Canada to Victor Conte at 345 California Drive in Burlingame, CA. The total weight of the package is listed as 3 pounds with a declared value of $431.75. The shipment is dated 4/22/2003 (5/5/03).

- November/December 2002 issue of "Anabolic Insider", an underground steroid publication (12/16/02).

- Various small envelopes and letters from Kevin Toth, the world's #1 ranked shot putter in 2003. Each envelope has a return address of "Kevin & Laura Toth, 1622 Barlow Road, Hudson, OH, 44326." The envelopes are all small sized, just larger than a personal check. Among the letters are the following:

  - Vic, you are the man.
    I am ready.
    74'4"
    *indoor World Record
    *indoor World Champion
    Thank you so much.
    KT
    (11/18/02)

  - Vic, here is a check for the next cycl4 (sic).
    I need it by the end of the week.
    Thanx, Kevin.
    (12/16/02)

---

2 Testosterone is an anabolic steroid and classified as a Schedule III controlled substance as listed in Title 21, U.S.C. § 802.

3 Oxandrin, a brand name of oxandrolone, which is an anabolic steroid and classified as a Schedule III controlled substance as listed in Title 21, U.S.C. § 802.

4 A cycle is a common phrase used for the administration of anabolic steroids because the users typically cycle their use on an on and off basis so that the body will not shut down its natural production of testosterone.

Affidavit in Support of Search Warrant

- Thanx Vic,
  Kevin
  (12/30/02)

- Vic, here is $350, $300 for next +
  $50 for what I owed for last.
  Thanx, Kevin.
  74.5, WR of future indoor.
  (2/3/03)

- Thanx Vic,
  Kevin
  74.5 1/2
  March 2
  1:30 p.m.5
  (3/3/03)

- Two (2) personal notes from Regina Jacobs, professional track and
  field distance runner who set the indoor world 1500 meter record this
  year at 39 years old. The notes read:

  - Victor,
    Thank you for the help at nationals!
    Regina
    P.S.
    A bonus from "Team Jacobs" to
    "Team Balco" (3/24/03).

  - Victor...Jim...
    Just wanted to let you know I appreciate
    everything that you did. All that I have accomplished
    this season would not have been possible
    without your support. Thanks!! R. (3/24/03).

- VWR International packing list indicating a delivery of one 100-count
  package of 23-gauge syringes and one 100-count package of 25-gauge
  syringes to Balco Laboratories (10/14/02).

---

5 On March 2, 2003, Kevin Toth won the men's shot put at the United States Indoor Track and
Field Championships. On April 19, 2003, Toth threw the shot put 74' 4.5" to win the Kansas
Relays. It is the farthest anyone has thrown the shot put in the world since 1990.

Affidavit in Support of Search Warrant

- Yellow post-it note listing human growth hormones Nutropin AQ and Somatropin, both substances with steroid-like strength enhancing features (4/28/03).

- Four (4) empty "pill-sheets" of "Omifin", a prescription clomid or anti-estrogen drug typically taken by steroid users after a steroid cycle to improve their recovery of natural testosterone production (12/16/02 through 1/13/03).

- One empty box of Epogen, a prescription erythropoetin that stimulates the production of oxygen carrying red blood cells and is commonly used by endurance athletes to increase stamina and athletic performance. The box once contained ten (10) 1.0 ml single use vials (1/13/03).

- Empty and shredded box of Procrit, a prescription epoetin used to increase red blood cell production and commonly used by endurance athletes to achieve better fitness. Box once contained twenty-five (25) 1 ml vials (3/31/03).

- Two (2) empty pills sheets of prescription diuretics, which are commonly used by bodybuilders to rid themselves of excess water or fluids to make their muscles stand out. It is also used to mask the presence of steroids in drug tests (1/13/03).

- Portion of an e-mail addressed to "Victor" that discusses characteristics of athletic performance enhancing drugs, similar to anabolic steroids, as well as their prices (9/16/02). A picture of this document appears below:

Affidavit in Support of Search Warrant



X-Mailer:
X-MimeOLE: Produc

Dear Victor,

I apologize for not responding sooner, been *extremely busy.*

Invisible "BT"--is an injectable; works best with those whose endocrin
results, the more genetically gifted the athlete the more BT works; sir
definitely just not detectable. Cons of BT -- may exhibit mild propert

Invisible "NP"--is an injectable; works best on a high protein diet--
can be taken for 2 to 3 months. Pulsatile administration works w
NP -- very kind on liver values. Cons of NP -- Can encourage f

Invisible "HD" --is a cream; works best taken 3 times per day. Sin
proprioreception. Some, although not all, notice a quick strength cure
effect occurs when taken on a high (greater than 8 per day) egg intake
to use and goes to work fast--like the first day. Cons of HD -- you go thi



10 per vial for 51 to 100.  $8 per
"    "    "    "  .  $11 "  "
jar for 31 to 50.  $50 per jar fu

constantly changes and there are otl
want to do.

Affidavit in Support of Search Warrant

## G. Examination of Balco's Medical Waste

26.     Through an analysis of subpoenaed bank records belonging to

Balco Laboratories, Stericycle, a medical waste transport company used by

Balco was identified.  Several checks in Balco's bank account were made

payable to Stericycle.  Stericycle maintains a regional office in San Leandro,

California.  A grand jury subpoena was issued to Stericyle for the medical waste

picked up from Balco Labs.  To date, six (6) separate medical waste pick-ups

from Balco have been examined.  The following is a partial list of the items

retrieved with dates from the discarded medical waste of Balco Labs:

| Date | Items |
|------|-------|
| 12/18/02 | • Eight (8) used syringes<br>• One (1) vial of Epogen (prescription erythropoetin) |
| 1/13/03 | • Eleven (11) used syringes<br>• One (1) vial of testosterone (anabolic steroid) |
| 3/10/03 | • Eight (8) used syringes<br>• One (1) vial of unknown substance w/label removed |
| 4/7/03 | • Seven (7) used syringes<br>• Torn airline ticket receipt indicating a flight from London to San Francisco by Dwain Chambers, a world-class 100 meter dash runner and 2002 European athlete of the year. |
| 5/5/03 | • Eleven (11) used syringes<br>• Twenty-Seven (27) vials of Nutropin, a prescription human growth hormone.<br>• One (1) vial of Genotropin, a prescription human growth hormone.<br>• One (1) clear vial with no label. |
| 6/2/03 | • Twelve (12) used syringes. |

Affidavit in Support of Search Warrant

• Twenty-two (22) empty one-use syringe
wrappers.
• One (1) vial of Epocrit, a prescription
erythropoetin.

27.     The used syringes that were retrieved from the December 18,

2002, and January 13, 2003, examinations of medical waste, were analyzed by

the San Mateo County Sherriff's Office Forensic Laboratory for their content.

The laboratory was able to extract enough fluid from two (2) syringes and one

vial. One syringe and the vial tested positive for the presence of testosterone,

an anabolic steroid. The other syringe tested positive for the presence of

stanozolol, an anabolic steroid. Both testosterone and stanozolol are listed as

Scheduled III controlled substances under Title 21 U.S.C. § 802. Additional

syringes and vials from the March 10, 2003, April 7, 2003, May 5, 2003 and

June 2, 2003 pick-ups were sent to the lab for analysis and the results are

currently pending.

## H. Greg Anderson

28.     Ed Barberini, an agent with the San Mateo County Narcotics

Task Force (NTF), informed me that the NTF has received information from a

confidential informant that GREG ANDERSON is well known within the "steroid

community" as a steroid dealer and that his steroid clients include members of

the professional baseball team San Francisco Giants. Agent Barberini has

informed me that the confidential informant who provided this information was

charged and pleaded guilty to State felony steroid distribution charges a few

Affidavit in Support of Search Warrant

years ago. Since the charge and guilty plea, the informant has been providing information to the NTF on other individuals associated with steroids in an attempt to work off sentencing time in his criminal case. Agent Barberini has informed me that due to the cooperation provided by the informant, he has not done any jail time for his steroid conviction. The informant has never been paid by the NTF. Agent Barberini has informed me that the informant has been deemed a reliable informant.

29. The GREG ANDERSON identified by the NTF informant is the same GREG ANDERSON detailed in the aforementioned media articles in paragraphs 22 and 23, as the personal fitness trainer of Barry Bonds.

30. In October of 2002, I received a phone call from San Jose DEA special agent Doug James. Agent James informed me that the San Jose office of DEA had received an anonymous tip regarding an individual distributing anabolic steroids. The individual alleged that GREG ANDERSON was supplying steroids to several members of the San Francisco Giants.

31. ANDERSON's vehicle, a 1999 Chevy Tahoe with license plate "W8 GURU" has been observed on several occasions late in the evening in the parking lot of Balco Labs. On December 2, 2002, I observed ANDERSON exit the premises of Balco Labs alone at approximately 9:52 p.m. Just before his exit, all of the lights inside Balco were turned off. Upon exiting alone, ANDERSON locked the front door to Balco with a key in his possession.

Affidavit in Support of Search Warrant

32.    During the aforementioned examinations of discarded trash at

Balco Labs at 1520 Gilbreth Road in Burlingame, California discussed in

paragraph 25, I retrieved several pieces of evidence that showed a connection

between Balco Labs, GREG ANDERSON and several major league baseball

players.  This evidence along with the date that it was obtained is as follows:

- Fed Ex shipping receipt indicating a shipment by Greg Anderson to Benito Santiago, a current member of the San Francisco Giants. (12/16/02).

- FedEx package receipt from Jeremy Giambi, a major league baseball player currently with the Boston Red Sox, sent to Greg Anderson (1/13/03).

- FedEx package receipt from Greg Anderson sent to Jeremy Giambi (1/13/03).

- FedEx package receipt from Jeremy Giambi sent to Greg Anderson, Balco Labs, 1520 Gilbreth Road, Burlingame, California (2/17/03).

- FedEx package receipt from Marvin Bernard, a major league baseball player with the San Francisco Giants, sent to Greg Anderson at 1520 Gilbreth Road, Burlingame, California (2/17/03).

- Express Mail package receipt from Armando Rios, a major league baseball player with the Pittsburgh Pirates, and formerly with the San Francisco Giants, sent to Balco Labs to the attention of Greg Anderson (2/17/03).

- FedEx package receipt from Gary Sheffield, a major league baseball player with the Atlanta Braves, sent to Balco Labs (2/17/03).

- Two small white envelopes addressed only as "For Greg Anderson" and "For Greg Anderson-Only" (2/17/03).

- Fax from VICTOR CONTE at Balco Laboratories to Jim Schmaltz at "Weider" reading "Dear Jim, As briefly discussed, enclosed is the nutrition program and weight training program for Barry Bonds.  Please call Victor and Greg directly to answer any questions and receive

26 of 51

Affidavit in Support of Search Warrant

quotations. Victor Conte cell # 415 602 9993, Greg Anderson cell # 650 400 0481." (3/3/03).

•   Torn Fed Ex receipt indicating a package sent to Greg Anderson of Snac Systems, from Jeremy of the Tampa Bay Devil Rays, a major league baseball team (4/7/03).

## I. Surveillance

33.   Surveillance conducted in this investigation has also established a connection between Balco Laboratories, GREG ANDERSON and professional athletes. During surveillance the following significant events were observed:

34.   On September 11, 2002, GREG ANDERSON, was observed arriving at Balco Laboratories in his Chevy Tahoe with the license plate of "W8 GURU". After just a few minutes inside the offices of Balco Labs, ANDERSON returned to his vehicle and proceeded northbound on Highway 101 towards San Francisco. ANDERSON was followed to San Francisco until he entered the players' parking lot area of Pacific Bell Park, home of the San Francisco Giants, past a gated and guarded entrance. A short time later, his vehicle was observed double-parked in front of several other cars inside the players' parking lot area. Less than two (2) hours later, ANDERSON's vehicle was observed back in Burlingame in the parking lot at 888 Hinckley Road, Burlingame, formerly World Gym and now Bay Area Fitness.

35.   On September 23, 2002, agents performed surveillance on Balco Laboratories throughout the day. At approximately 1:14 p.m., a white Ford Excursion with Texas license plates "H66 DZH" arrived in the parking lot of Balco Labs. GREG ANDERSON exited the passenger side of the vehicle and a

Affidavit in Support of Search Warrant

white male, later identified as RANDY VELARDE, an infielder with Major League Baseball's Oakland Athletics, exited the driver's side. It was later determine that this vehicle is registered to RANDY L. and JEANIE VELARDE of Midland, Texas. In the parking lot of Balco Labs, ANDERSON was observed introducing VELARDE to CONTE and JAMES VALENTE, the vice president of BALCO LABS. The four (4) walked inside together into Balco Labs. Approximately seven (7) minutes later, the four reemerged from Balco and VELARDE and ANDERSON drove off. Neither VELARDE nor ANDERSON carried anything away from Balco.

36. On November 12, 2002, an unidentified black male arrived at Balco Laboratories. Although he wore a baggy sweatsuit, it was evident that the individual was extremely muscular and a bodybuilder. The black male entered Balco Labs and returned to his vehicle approximately six (6) minutes later and drove off. He left Balco Labs with nothing in his hands.

37. On November 27, 2002, and January 16, 2003, Gary Sheffield, a professional baseball player with the Atlanta Braves, was observed arriving at Balco Labs, entering the building and leaving the premises just five to ten minutes later with nothing in his hands.

38. On January 10, 2003, a large black male bodybuilder later identified as Raoul Fulcher, a professional bodybuilder, was observed arriving at Balco Labs. Fulcher spent approximately 10 minutes inside of Balco before exiting and leaving in his vehicle. He left with nothing in his hands.

28 c f 5'

Affidavit in Support of Search Warrant

39.     In January of 2003, on numerous occasions, GREG

ANDERSON has been surveilled conducting weight training workouts with Barry

Bonds, a member of the San Francisco Giants, and Gary Sheffield, a member

of the Atlanta Braves, within the premises of Bay Area Fitness, a workout gym

located at 888 Hinckley Road in Burlingame. The gym is approximately 100

yards from the location of Balco Laboratories.

40.     On April 18, 2003, Dwain Chambers, a world class track and

field sprinter and 2002 European track and field athlete of the year, was

observed entering Balco Laboratories. Approximately eight (8) minutes later,

Chambers was observed leaving Balco Laboratories. Upon walking out of

Balco, Chambers had his right pants leg rolled up to his kneecap. Chambers

proceeded from Balco to Bay Area Fitness, a workout gym located around the

corner from Balco Laboratories. During this time, GREG ANDERSON's vehicle,

a Chevy Tahoe with license plate "W8GURU", was parked outside of Bay Area

Fitness.

### J. Financial Analysis

41.     To date several federal grand jury subpoenas have been issued

to financial institutions for bank records relative to VICTOR CONTE and his

businesses, Balco Laboratories and SNAC Systems Inc. Only a portion of

those subpoenaed records have been received to date. The records that have

been received to date, reflect a large amount of cash withdrawal activity by

VICTOR CONTE over the last few years. The bank records received to date,

Affidavit in Support of Search Warrant

reflect that from January of 2000 through September of 2002, CONTE withdrew in excess of $480,000 in currency from his personal and business accounts.

42.     Based upon the amount of bank records still outstanding, and the patterns and trends of cash withdrawals observed from records already received, the amount of currency withdrawn from the time period January of 2000 through September 2002, likely to greatly exceed the $480,000 confirmed cash withdrawal figure to date.

43.     During the surveillance of Balco Laboratories on September 23, 2002, agents followed VICTOR CONTE to the Broadway, Burlingame branch of Wells Fargo Bank. As CONTE approached the teller inside the bank she asked him "100's?" CONTE said yes as the teller took paperwork from him, stamped it and counted out $2,000 cash in $100 bills. After receiving the cash from the teller CONTE stated "See you tomorrow."

44.     Based upon my training and experience, and the training and experience of agents from the San Mateo County Narcotics Task Force (NTF), persons involved in purchasing steroids and other controlled substances on the black market usually make those purchases with cash in order to avoid a financial trail on those transactions. Additionally, based upon my training and experience as a financial investigator, and the many businesses and corporations that I have financially analyzed and investigated, I do not believe that an individual with at least one (1) personal and two (2) corporate checking accounts like VICTOR CONTE, would have a legitimate need for a large volume

Affidavit in Support of Search Warrant

of currency like CONTE appears to be generating. Multiple checks are written

from CONTE's corporate account for vendors, landlords, employees and utility

expenses, showing that he makes business payments with checks in his regular

course of business. CONTE's personal mortgage payments and car payments

are also made via checks.

45.     In addition to the frequent and large volume of currency

withdrawals observed through CONTE's accounts, CONTE makes numerous

deposits into a personal bank account held with Wells Fargo Bank consisting of

large checks from professional athletes. The following payments to CONTE by

professional athletes in the partial return of bank records received to date are

noted:

- $6,200.00 check deposited on 2/29/2000, from the bank account of Julie and Bill Romanowski. Bill Romanowski is a professional football player currently with the Oakland Raiders, and at the time of the deposit was with the Denver Broncos.

- $2,100 check deposited on 6/1/2000, from the bank account of Kevin Toth, the current #1 ranked shot putter in the world. As mentioned earlier in this affidavit in paragraph 25, a note from Toth to CONTE was located in Balco Labs' discarded trash which referred to a payment Toth was making to CONTE for his next cycl (sic), a common term for anabolic steroids.

- $7,350 check deposited on 9/8/2000, from the bank account of Mjones & Associates, a business associated with Marion Jones, the world's top female track and field sprinter.

- $1,100 check deposited on 1/18/2001, from the bank account of Bill Romanowski.

- $875 check deposited on 4/27/01, from the bank account of Tim Montgomery, the current men's 100 meter dash world record holder.

Affidavit in Support of Search Warrant

- $1,000 check deposited on 5/2/2001, from the bank account of Bill Romanowski.

- $750 check deposited on 8/31/01, from the bank account of Tarnesia Gardener, the wife of current Denver Broncos football player, Daryl Gardener

- $3,000 check deposited on 10/26/01, from the bank account of Bill Romanowski.

- $1,400 check deposited on 12/3/01, from the bank account of Bill Romanowski.

- $750 check deposited on 1/23/02, from the bank account of Tarnesia Gardener, the wife of current Denver Broncos football player, Daryl Gardener.

- $750 check deposited on 1/29/02, from the bank account of Kevin Toth.

- $120 check deposited on 3/27/02, from the bank account of Kevin Toth.

- $960 check deposited on 5/3/02, from the bank account of Zhanna Block, the current women's world champion 100 meter dash sprinter.

- $240 check deposited on 5/7/02, from the bank account of Kevin Toth.

- $120 check deposited on 5/30/02, from the bank account of Kevin Toth.

- $370 check deposited on 6/6/02, from the bank account of Eric Thomas, a 2000 Olympic 400 meter hurdles participant.

- $370 check deposited on 6/6/02, from the bank account of Regina Jacobs, the women's world record holder in the 1500 meter run. Jacobs set the world record this year on February 1st, at an age of 39 years old.

- $500 check deposited on 6/6/02, from the bank account of Regina Jacobs.

- $195 check deposited on 8/14/02, from the bank account of Ramon Clay, the current United States 200 meter dash champion.

- $4,000 check deposited on 8/20/02, from the bank account of Bill Romanowski.

Affidavit in Support of Search Warrant

\*\*Numerous deposited checks made to CONTE's personal account from 10/18/2001 through August of 2002 are still outstanding.

46.     On the monthly statement relating to CONTE's personal bank account with Wells Fargo Bank, dated August 22, 2002, a deposit was made in the form of an international wire in the amount of \$1,980.00. The wire originates from Barclays Bank and was sent by Dwain Chambers. As detailed earlier in paragraph 40, Dwain Chambers is a world-class 100 meter track and field sprinter who was voted track and field's European athlete of 2002, who has been observed frequenting Balco Laboratories.

47.     As noted in each of the above listed payments by athletes to CONTE, each one is deposited into CONTE's personal bank account, not into either one of his corporate bank accounts held in the name of Balco Laboratories Inc. and SNAC System Inc. In my training and experience as a financial investigator, it has been my experience that when a business earns revenue associated with the goods or services offered by that business, the deposit of that revenue is deposited into the business bank account, and not a personal account of the business's owner. My examination of the two (2) corporate bank accounts belonging to Balco and SNAC Systems Inc., revealed regular deposits of business receipts.

### K. Emeric Delczeg

48.     During the aforementioned surveillance of Balco Labs on September 23, 2002, as discussed in paragraphs 35 and 40, a white male, later

Affidavit in Support of Search Warrant

identified as Emeric Delczeg, was observed spending several hours inside the offices of Balco. Internet research revealed that DELCZEG is a 50-year-old professional bodybuilder who currently competes in masters' bodybuilding competitions.

49. In the aforementioned interview of CONTE in the November 13, 1998 article of "Testosterone" magazine, detailed in paragraph 24, CONTE states: "A few of the older athletes feel that GH (growth hormone) supplementation has helped them extend their competitive career. I know a pro bodybuilder named Emeric Delczeg who's 47 years of age who supplements with GH (growth hormone), and he maintains a level of around 400 ng/ml. This is the level of a man twenty years younger."

50. On October 10, 2002, I received information from San Mateo County Narcotics Task Force agent Ed Barberini that the same source mentioned earlier in this affidavit in paragraph 28, who had provided information on GREG ANDERSON, had provided them with information that EMERIC DELCZEG was a steroid supplier to Balco Laboratories. The source told NTF that DELCZEG, who is Bulgarian, obtains steroids and other performance enhancing drugs from Europe and provides them to Balco in exchange for permission to sell a supplement on which Balco or its subsidiary, SNAC System Inc., owns licensing rights. The source told NTF that DELCZEG was currently in Europe to purchase steroids for Balco.

Affidavit in Support of Search Warrant

51.    United States Customs Special Agent Matt Van Dyke was contacted regarding any Customs information on DELCZEG. Special Agent Van Dyke provided me with information that DELCZEG had a shipment of twenty-five (25) ampules of steroids seized from a UPS hub in Louisville, Kentucky on June 25, 1996. Two documents found inside the shipment listed the supervising physician as Dr. James Buckley, 2100 Carlmont Drive, Belmont, CA. On June 26, 1998, law enforcement officials contacted DELCZEG about the seizure of the steroids. DELCZEG admitted ordering the steroid for his personal use and that he used the name of Dr. James Buckley to make the order look legitimate, but that Buckley was not involved in the importation of the steroids.

52.    Further information provided on DELCZEG by Special Agent Van Dyke was that DELCZEG entered the United States on a flight from Europe on October 9, 2002, the day before the NTF had informed me of their source's information that DELCZEG was in Europe to obtain steroids for Balco Labs. Upon entry into the United States, DELCZEG was referred to secondary inspection by Customs, however, no steroids or illegal property were found on his person or in his baggage. DELCZEG was further identified as having an active import record and import number. Special Agent Van Dyke informed me that the import number is in the name of EMERIC DELCZEG and PAUL BEZDEK, DBA Fitness Enterprise. Special Agent Van Dyke provided me with

Affidavit in Support of Search Warrant

further information that BEZDEK, DELCZEG's business partner, had a steroid seizure made from him in 1992.

53. On October 21, 2002, an examination of the discarded trash from the residence of EMERIC DELCZEG at 2711 All View Way in Belmont, California was performed at the BFI transfer station in San Carlos, California. Located within the discarded trash from DELCZEG's residence were two (2) used syringes, a large medical needle and a clear vial with a small amount of clear fluid. Although the vial's contents were tested by the DEA lab in San Francisco and no traces of a controlled substance were detected, I know that syringes and vials of this nature are synonymous with anabolic steroid paraphernalia, and that individuals who are taking anabolic steroids will often inject other, non-controlled substances to increase the effectiveness of the steroids.

54. A business card was also located in the discarded trash of EMERIC DELCZEG. The card reflects a business name of "Fitness Enterprises" and an employee name of EMERIC DELCZEG. Additionally, the e-mail address of **edelczeg@aol.com** is listed on the card.

55. During surveillance conducted on Balco Labs on November 12, 2002, DELCZEG was observed in the Balco Lab parking lot handling boxes near his vehicle, a 1995 Mercedes with license plate 4EKP435. DELCZEG's vehicle was observed in the Balco Labs parking lot for several hours.

Affidavit in Support of Search Warrant

Additionally, several items located in the discarded trash of Balco Labs, including luggage tags and post-it notes, have DELCZEG's name on them.

56.    Financial analysis, as detailed in paragraphs 41 through 47 of this affidavit, has revealed numerous payments by CONTE to DELCZEG from CONTE's SNAC Systems Inc. corporate account. The following payments made from the Wells Fargo Bank SNAC System Inc. corporate account to EMERIC DELCZEG were noted:

| Check Date | Amount | Destination |
|---|---|---|
| 2/24/99 | $1,600 | Cashed by Delczeg |
| 2/8/00 | $1,500 | Cashed by Delczeg |
| 2/14/00 | $1,984 | Cashed by Delczeg |
| 2/24/00 | $3,188 | Cashed by Delczeg |
| 3/13/00 | $1,200 | Cashed by Delczeg |
| 3/21/00 | $1,600 | Cashed by Delczeg |
| 4/5/00 | $3,600 | Cashed by Delczeg |
| 4/19/00 | $1,060 | Deposited to Delczeg personal account |
| 5/24/00 | $2,800 | Cashed by Delczeg |
| 6/16/00 | $4,900 | Cashed by Delczeg |
| 11/3/00 | $2,250 | Cashed by Delczeg |
| 12/1/00 | $1,640 | Cashed by Delczeg |
| 1/24/01 | $1,500 | Cashed by Delczeg |

*       Several months of records relating to the SNAC System Inc.
Wells Fargo Bank corporate account are still outstanding.

Affidavit in Support of Search Warrant

57. Based upon the deposit of one of the above checks to Delczeg's personal account, an account held with Washington Mutual Bank, a grand jury subpoena was issued for records relating to this account. Among the records received on the account to date, were three (3) checks written by Delczeg in July of 2002 to Anthony McDonald. In the bottom left portion of each check are written the letters "HGH". I know the letters "HGH" to be synonymous with the performance enhancing drug human growth hormone. As detailed in paragraph 25 of this affidavit, a torn and empty box of human growth hormone was located in the discarded trash of Balco Laboratories on September 3, 2002 and a yellow post-it note with the names of two human growth hormones, Nutropin AQ and Somatropin was located in the discarded trash of Balco Laboratories on April 28, 2003. Also, as detailed in paragraph 26, twenty-eight (28) vials of human growth hormone were found in Balco's discarded medical waste on May 5, 2003. While human growth hormone is not classified as a controlled substance, I am aware that it has athletic performance enhancing benefits and is commonly used by athletes to achieve greater muscle size and strength. Additionally, under State law, human growth hormone requires a prescription for an authorized medical use in order to be distributed. The checks from Delczeg to Anthony McDonald are as follows:

| Check Number | Check Date | Amount | Notation |
|---|---|---|---|
| 1774 | 7/3/02 | $2,500.00 | HGH |
| 1784 | 7/12/02 | $2,400.00 | HGH |

Affidavit in Support of Search Warrant

1811            7/25/02          $5,000.00      HGH

58.    Each of the above cancelled checks indicated that McDonald

negotiated them for cash with an Arizona driver license.  A criminal history

check of McDonald revealed an extensive criminal history including felony

convictions for theft, misdemeanor conviction for making a false reports and

several other arrests for felony and misdemeanor violations including weapons

charges.  Additionally, I have received information from a United States

Customs database that McDonald had 35 counterfeit Rolex watches seized

from his residence in 1988 or 1989.

59.    A Federal Grand Jury subpoena was issued for records relating

an American Express account held by Balco Laboratories in the name of

JAMES J. VALENTE.  Records from American Express received in response to

that subpoena reveal several charges to VALENTE's account from "In Touch

Pharmaceuticals" in Phoenix, Arizona.  Public records research on "In-Touch

Pharmaceuticals" reveals that the company's registered agent with the State of

Arizona is the same Anthony McDonald as detailed in the above paragraph.

The following is a summary of charges from "In-Touch Pharmaceutical" to

VALENTE's Balco Labs' American Express account:

| Date | Amount |
|------|--------|
| 7/28/00 | $495.00 |
| 8/4/00 | $495.00 |
| 8/7/00 | $995.00 |
| 8/14/00 | $2500.00 |
| 8/14/00 | $2500.00 |

Affidavit in Support of Search Warrant

8/21/00                $995.00

### L. Use of Epitestosterone to Fraudulently Mask Steroid Use

60.     During the examination of discarded trash from Balco

Laboratories, an invoice for the purchase of an unknown quantity of

epitestosterone was located that indicated the purchase and shipment of

epitestosterone to Balco Laboratories and Victor at 1520 Gilbreth Road in

Burlingame, California, from a company named Sigma.

61.     I contacted and spoke to Dr. Don Catlin, the medical director of

the UCLA Olympic Laboratory. Dr. Catlin explained to me that his laboratory is

the premier performance-enhancing drug testing facility in the United States.

Dr. Catlin's lab performs drug testing for the International Olympic Committee,

the National Football League and the National Collegiate Athletic Association

(NCAA).

62.     Dr. Catlin stated that the primary use for epitestosterone, a

purchase order made by Balco and CONTE for which is detailed above in

paragraph 60, is to fraudulently defeat testosterone (anabolic steroid) drug

testing. Catlin stated that the way that abnormal testosterone levels are

measured in a person is in a ratio against the epitestosterone levels in that

person's urine or blood. He stated that a normal testosterone to epitestosterone

ratio in a human is 1:1, but that most sports' governing bodies allow a 6:1 ratio

of testosterone to epitestosterone in order to account for some individuals'

natural abnormalities. Dr. Catlin explained that when an athlete is taking large

Affidavit in Support of Search Warrant

amounts of testosterone to enhance athletic performance, they will often inject

epitestosterone right before a steroid test is administered in order to even out

their ratio and fraudulently pass the test.

63.     Although epitestosterone is a biological form of testosterone, it

does not promote muscle growth and therefore is not a controlled substance as

defined in Title 21 U.S.C. Section 802.

### M. CONTE Epitestosterone Newsgroup Posting

64.     In addition to the newsgroup postings by VICTOR CONTE

displayed earlier in this affidavit in paragraph 20, CONTE made another

newsgroup posting specifically inquiring about the availability of epitestosterone.

This epitestosterone posting as well as a response from another newsgroup

member, is as follows:

---

From: Victor Conte (Conte@Balcolab.com):
Subject: Epitestosterone availability?
Newsgroups: misc.fitness.weights
Date: 1999/06/08

Does anyone know if epitestosterone is available from any source?

---

From:  Bill Roberts (wroberts@grove.ufl.edu)
Subject: Re: Epitestosterone availability?
Newsgroups: misc.fitness.weights
Date: 1999/06/08

Steraloids or Sigma.

You could also make it readily by tosylation of testosterone followed
by hydrolysis.  There may be another better method but that one
works.

Affidavit in Support of Search Warrant

Thanks for posting, Victor: I'd forgotten about you and forgot to put your name into my new replacement killfile. This was a handy reminder.

However, keep in mind that it is a controlled substance.
-- Bill

65.     It should be noted that the purchase order found in Balco's trash that details an order of an unknown amount of epitestosterone by VICTOR at Balco Laboratories, is from Sigma, one of the two epitestosterone sources that Bill Roberts recommends to CONTE in the aforementioned posting.

66.     To date, a partial response to a grand jury subpoena has been received on a Balco Laboratories Inc. corporate bank account held with Washington Mutual Bank. Two (2) checks were located in Balco Lab's Washington Mutual Bank records that reflect payments made to Sigma-Aldrich, also known as Sigma, the company from which a purchase order shows CONTE ordered an unknown quantity of epitestosterone. Details of the checks are as follows:

| Check Date | Payee | Amount |
|---|---|---|
| 2/25/02 | Sigma-Aldrich | $271.54 |
| 8/22/02 | Sigma-Aldrich | $298.60 |

67.     Additionally, records retained from the Federal Grand Jury Subpoena served on American Express for Balco Labs' and JAMES VALENTE's American Express account, as discussed in paragraph 61, reflect

Affidavit in Support of Search Warrant

additional charges from Sigma-Aldrich. The following charges were made on Balco's/VALENTE's American Express card to Sigma-Aldrich:

| Charge Date | Amount |
|---|---|
| 4/8/02 | $271.36 |
| 5/22/02 | $298.66 |
| 11/12/02 | $298.54 |

**N. Payments to Quest Diagnostics Containing Notation "Steroid(s)"**

68.    In the subpoenaed bank records received to date from Balco Labs' corporate account with Washington Mutual Bank, numerous checks written from the Balco Labs account and signed by VICTOR CONTE JR. are made payable to "Quest Diagnostics", a nationwide laboratory testing facility. Several of these checks have the notation "steroids" written on them. At least thirty-three (33) such checks to Quest Diagnostics, written during the time period from September 13, 2000, through May 20, 2002, have been identified with the notation "steroid(s)" on them. In addition to those thirty three (33), another sixty-five checks (65) are written to Quest Diagnostics from the Balco Labs account during the same time period and in similar amounts, which do not have the notation "steroids" on them. I am aware through Internet research, that certain Quest Diagnostics testing facilities perform blood and urine tests for anabolic steroids, suggesting the possibility that CONTE is sending his athlete clients' blood or urine samples to Quest in order to determine whether the presence of steroids can be detected.

Affidavit in Support of Search Warrant

## O. Barry Bonds "LabOne" Sample

69.    On March 3, 2003, I conducted an inspection of the discarded

trash outside of Balco Laboratories at 1520 Gilbreth Road in Burlingame,

California. Among the documents and items seized, was an internal Balco

Laboratory document, which details specimens taken from patients along with a

date, time, accession number and physician name. Over the course of

examining Balco's trash over the past six months, I have observed this type of

document on several occasions. As detailed below, the specific document

seized on March 3, 2003, reflects that on February 5, 2003, at 9:30, patient

Barry Bonds had an "RBC" and "plasma" specimen taken under the physician

name of Goldman. As detailed in paragraph 15 of this affidavit, Brian Halvie-

Goldman is the listed medical director of Balco Labs with the State of California

and works for Amen Clinic in Fairfield, California as a psychiatrist specializing in

child and adolescent psycopharmacology. A copy of this document appears

below:

Affidavit in Support of Search Warrant

DATE DIGESTED: _____  2·13 ᛒ  _____ RUN #_____

| | Date | Time | Accession # | SPECIMEN CODE | PHYSICIAN | PATIENT NAME FIRST | LAST | PATIENT ID# | File Date |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 01-31/03 | 8:30 | 98417 | R | HEDAYA | | RONI RUDELL | | |
| 2. | 01/31/03 | " | 98418 | P | • | | • | | |
| 3. | 01/31/03 | " | 98419 | U | • | | • | | |
| 4. | 2/4/03 | 11:10 | 98420 | R | RESK | | MARK OWENS | | |
| 5. | 2/4/03 | " | 98421 | P | • | | • | | |
| 6. | 2/4/03 | " | 98422 | B | | | • | | |
| 7. | 2/5/03 | 9:30 | 98423 | R | GOLDMAN | | BARRY BONDS | | |
| 8. | 2/5/03 | " | 98424 | P | • | | • | | |
| 9. | 2/11/03 | 10:38 | 98425 | R | HEDAYA | | JANE LEE | | |
| 10. | 2/11/03 | " | 98426 | P | • | | • | | |
| 11. | 2/11/03 | " | 98427 | U | • | | • | | |
| 12. | 2/13/03 | 9:50 | 98428 | R | HEDAYA | | ERIKA JACKSON | | |
| 13. | 2/13/03 | " | 98429 | P | • | | • | | |
| 14. | 2/13/03 | " | 98430 | U | • | | • | | |

SPECIMEN TYPE CODE  H=HAIR  R=RBC  P=PLASMA  R=BLOOD  U=URINE  S=SUPPLEMENT  W=WATER

PAGE 349

70. During the same inspection of discarded trash on Balco Laboratories, I located a faxed document sent from Balco Labs to "LabOne" a medical testing lab, which among other tests, offers testing for testosterone levels in individuals. The document is labeled "affidavit" and states that a specimen sent on February 5, 2003, and labeled as "Barry B." was mislabeled and instead should read "Greg Anderson". The affidavit is signed by JAMES

45 of 51

Affidavit in Support of Search Warrant

VALENTE, who is the vice president of Balco Labs.  As detailed in paragraph 22
and section "H" of this affidavit, GREG ANDERSON is Barry Bonds' personal
trainer.  A copy of this document appears below:

Feb-07-03 09:34A                                                      P.02

Feb 06 03 04:50p    BALCO LABS              8508978578         P. 1
                                                              P.02
Feb-06-03 06:57P

⟨LabOne⟩                    **Affidavit**                    Form 41500
                                                            1/20/98

10101 Renner Blvd
Lenexa, KS 66219
1-800-548-7788 (phone)
913-859-8835 (fax)

On __2/5/03__  _____ the specimen(s) for _Corey Anderson_
     Date Collected                                    Patient's Name

__70145421__  _____ was mislabeled as
  Requisition #

__PUR__  _____ __Barry B.__  _____ __70145421__
Specimen Container        Patient's Name        Requisition #

_____  _____ _____  _____ _____
Specimen Container        Patient's Name        Requisition #

┌─────────────────────────────────────────────────────────────┐
│          To be Completed by Responsible Party                │
└─────────────────────────────────────────────────────────────┘

I certify that to my personal knowledge, the specimen(s) labeled as indicated are in fact specimen(s)
for:

_Greg Anderson_
Patient's Name

testing previously requested on the specimen(s) by said ___ ___ _____
                                                              Requisition Number

I affirm that the above information is correct

___Ja Pent___                     __2/6/03__
Signature                          Date

__James Valente__
Name (printed)

X_____         __2/6/03__
Witness Signature                 Date

↳ needs witness signature

71.    Although "LabOne" conducts testosterone (steroid) testing, it is
not clear from these two (2) documents what tests were being conducted on the

Affidavit in Support of Search Warrant

above referenced specimen. What is clear however, is that it appears likely that JAMES VALENTE is purposefully misrepresenting the source of the specimen sent to LabOne on February 5, 2003. As seen above in paragraph 61, Balco's internal document shows only two specimens taken on February 5, 2003, both of them from Barry Bonds. Nowhere on this document, or any other similar Balco Labs document that I have observed during the course of my investigation, have I seen GREG ANDERSON reflected as having a specimen taken by Balco Labs, suggesting a conscious effort to conceal Bonds' name being associated with a specimen that was sent for testing. This conduct is significant because of the potential media publicity and repercussions in the athletic community with having a high profile athlete such as Bonds using performance-enhancing drugs.

### James Valente

72.     A business card was located in the discarded trash of Balco Laboraties, identifying JAMES VALENTE as the vice president of Balco Laboroaties. Surveillance on Balco Laboratories has revealed that a 1998 Ford Expedition with license plate "BALCOVP" and registered to JAMES VALENTE, is parked outside Balco Labs during the daytime hours on almost a daily basis during the workweek. As detailed in paragraph 35 of this affidavit, VALENTE and VICTOR CONTE were observed being introduced by GREG ANDERSON to RANDY VELARDE, a former Oakland A's professional baseball player.

Affidavit in Support of Search Warrant

## Subject E-Mail Accounts

73. The e-mail address accounts that this affidavit requests to be searched are the Yahoo e-mail accounts **send2victor@yahoo.com** and **balcovp@yahoo.com**. On May 23, 2003, a federal grand jury subpoena was issued to Yahoo for subscriber information relative to the Yahoo e-mail accounts **send2victor@yahoo.com** and **balcovp@yahoo.com**. The information from Yahoo revealed the following subscriber information associated with the accounts:

| Account | Registered Name on Account |
|---|---|
| **send2victor@yahoo.com** | Mr. Victor Conte |
| **balcovp@yahoo.com** | Mr. Jim Valente |

74. In addition to the subscriber name information, Yahoo provided "Login Tracker" results for the two accounts, detailing dates and times that users logged onto the respective e-mail accounts. The "Login Tracker" results reflect that from May 13, 2003 through June 1, 2003, **send2victor@yahoo.com** was logged onto a total of thirty-nine (39) times. Additionally, the results reflect that from May 13, 2003 through June 2, 2003, **balcovp@yahoo.com** was logged onto a total of eighty-one (81) times.

75. This investigation has developed evidence of CONTE using an e-mail account to communicate with professional athletes and individuals involved in the research of athletic performance enhancing drugs. A court-ordered trap and trace device was placed on an e-mail account subscribed to by

Affidavit in Support of Search Warrant

VICTOR CONTE at **balcolab@earthlink.net**, in order to determine individuals

sending e-mails to CONTE. The following individuals and entities were

identified as sending e-mails to CONTE's account in June of 2003:

| Individual/Entities | Background |
| --- | --- |
| Michelle Collins | 2000 Olympic sprinter, 2003 World Indoor 200 meter dash champion |
| William Brink | Contributing consultant, columnist, and writer for various health, bodybuilding, and medical publications. Author of book entitled "Priming the Anabolic Environment". Author of numerous articles on anabolic steroids. |
| Dr. Mauro Di Pasquale | Former "Drug Program Advisor" for World Wrestling Federation. Author of several books on nutrition, sports medicine and drug use, including "Drug Use and Detection in Amateur Sports". |
| MESO-Rx | Distributor of newsletter featuring information on "anabolic-androgenic steroids and anabolic pharmacology information". |
| Testosterone Magazine | Web-site and newsletter with articles and information on anabolic steroids. |

The information received from the trap and trace order also identified that on a

few occasions, including the e-mails CONTE received from Michelle Collins, a

duplicate address of **send2victor@yahoo.com**, was included in the provided

header information, indicating that the identical e-mail was sent to CONTE's

address at **send2victor@yahoo.com** as well. This further provides probable

cause that a search warrant of CONTE's and VALENTE's e-mail accounts will

Affidavit in Support of Search Warrant

provide evidence of their distribution of anabolic steroids to their professional athlete clients.

## CONCLUSION

76.     I believe that the foregoing facts presented in this affidavit present probable cause to believe that evidence of the involvement of VICTOR CONTE, JAMES VALENTE, EMERIC DELCZEG, GREG ANDERSON and others, in committing violations of Title 21 U.S.C. § 841, the possession with intent to distribute, and distribution, of anabolic steroids, Title 18 U.S.C. § 1341, mail fraud involving the use of epitestosterone to conceal the presence of anabolic steroids in athletes' urine and blood, and Title 18 U.S.C. § 1956, the money laundering of profits earned from the drug distribution and mail fraud activities, will be found on the e-mail accounts used by CONTE the president of Balco Labs at **send2victor@yahoo.com**, and JAMES VALENTE, the vice president of Balco Labs, at **balcovp@yahoo.com**.

77.     Specifically, this affidavit has presented evidence of illegal anabolic steroid distribution to professional athletes, use of the mail to purchase a substance used in the fraudulent defeat of athletic performance enhancing drug tests and large cash withdrawal activity combined with the deposit of large checks from numerous professional athletes into CONTE's personal account, constituting illegal money laundering transactions.  In addition this affidavit has presented evidence that the e-mail accounts **send2victor@yahoo.com** and **balcovp@yahoo.com** registered to VICTOR CONTE and JAMES VALENTE

Affidavit in Support of Search Warrant

respectively and are accessed frequently by their users. This affidavit has also shown at least one instance where an e-mail sent to "Victor" specifically discusses performance enhancing drugs and their prices (Paragraph 25), as well as evidence that CONTE receives e-mail at a subscribed account from athletes and individuals associated with writing and research on anabolic steroids.

78.     Based upon these facts, I believe that probable cause exists to believe that VICTOR CONTE and JAMES VALENTE are actively using their e-mail accounts at **send2victor@Balcolab.com** and **balcovp@yahoo.com** in furtherance of the above stated violations being committed.

79.     I declare under penalty of perjury that the foregoing is true and correct and that this affidavit was executed at San Jose, California, on June __10__, 2003.

Jeff Novitzky
Special Agent
Internal Revenue Service
Criminal Investigation

Sworn to and subscribed in my presence this __10__ day of June , 2003.

Howard R. Lloyd
United States Magistrate Judge
Northern District of California

51 of 51

Affidavit in Support of Search Warrant

## ATTACHMENT A

### I. Search Procedure

a.     The search warrant will be presented by law enforcement agents to the personnel of Yahoo located at 701 First Avenue, Sunnyvale, California. Yahoo personnel will be directed to isolate those accounts and files described in Section II below;

b.     In order to minimize any disruption of computer service to innocent third parties, Yahoo employees will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.     Yahoo employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to law enforcement agents who need not be present during the duplication of the files;

d.     Law enforcement personnel will thereafter review the information stored in the accounts and files received from the Yahoo employees and then identify and copy only the information contained in those accounts and files which is authorized to be further copied as described in Section III below; and

e.     Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo employees and will not further review the original duplicate absent an order of the Court.

### II. Files and Accounts to be Copied by Yahoo Employees

a.     All electronic mail stored and presently contained in, or on behalf of, the following electronic mail addresses and/or individual accounts: **send2victor@yahoo.com** and

ATTACHMENT A                    Page 1 of 3

**balcovp@yahoo.com.**

b.     All existing printouts from original storage of all of the electronic mail described above in Section II (a);

c.     All transactional information of all activity of the electronic mail addresses and/or individual accounts described above in Section II(a), including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

d.     All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above in Section II(a), including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, passwords, and detailed billing records; and

e.     All records indicating the services available to subscribers of the electronic mail addresses and/or individual accounts described above in Section II(a).

**III. Information to be Further Copied by Law Enforcement Personnel**

a.     The following email from **send2victor@yahoo.com** and **balcovp@yahoo.com.**

(1)     Electronic mail discussing athletic performance enhancing drugs, drug prices, drug administration methods, drug suppliers, the distribution and administration of performance enhancing drugs and clients who use performance enhancing drugs.

(2)     Electronic mail discussing performance enhancing drug tests, including methods and techniques used to defeat performance enhancing drug tests and results from performance enhancing drug tests conducted.

ATTACHMENT A            Page 2 of 3

(3)     Electronic mail discussing any financial matters involving Balco Labs,

SNAC Systems, Victor Conte, James Valente, Emeric Delczeg, Greg

Anderson or any other individual associated with those entities and

individuals including employees, vendors, suppliers and clients.

b.     Existing printouts from original storage of those items described in Section III(a)

above; and

c.     All of the records and information described above in Sections II(c), (d), and (e).

*B*

AO 93 (Rev. 8/95) Search Warrant

# United States District Court

**FILED**

SEP 2 5 2003

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFOR
SAN JOSE

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

EMAIL ACCOUNT:
send2victor@yahoo.com
Yahoo
701 1st Avenue
Sunnyvale California

## SEARCH WARRANT

CASE NUMBER:

**5 03 156** PVT

TO: _____ Jeff Novitzky _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Jeff Novitzky _____ who has reason to

Affiant

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

EMAIL ACCOUNT:
send2victor@yahoo.com
Yahoo
701 1st Avenue
Sunnyvale California

in the _____ Northern _____ District of _____ California _____ there is now

concealed a certain person or property, namely (describe the person or property)

See Attachment A which is incorporated herein by reference

~~SEALED BY ORDER~~
~~OF THE COURT~~

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ 8/5/03 _____

Date

(not to exceed 10 days) ~~the person or place named above~~ for the person or property specified, serving this warrant and making the search (in the daytime -- 6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to _____ The Honorable Patricia V. Trumbull _____ as required by law.

U.S. Judge or Magistrate Judge

_____ 7/25/03   11:30AM _____ at _____ San Jose, California _____

Date and Time Issued                                          City and State

The Honorable Patricia V. Trumbull                    Signature of Judicial Officer

Name and Title of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## ATTACHMENT A

### I. Search Procedure

a.     The search warrant will be presented by law enforcement agents to the personnel of Yahoo located at 701 First Avenue, Sunnyvale, California, and America Online located at 466 Ellis Street, Mountain View, California. Yahoo and America Online personnel will be directed to isolate those accounts and files described in Section II below;

b.     In order to minimize any disruption of computer service to innocent third parties, Yahoo and America Online employees will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.     Yahoo and America Online employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to law enforcement agents who need not be present during the duplication of the files;

d.     Law enforcement personnel will thereafter review the information stored in the accounts and files received from the Yahoo and America Online employees and then identify and copy only the information contained in those accounts and files which is authorized to be further copied as described in Section III below; and

e.     Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo and America Online employees and will not further review the original duplicate absent an order of the Court.

### II. Files and Accounts to be Copied by Yahoo and America Online Employees

ATTACHMENT A                    Page 1 of 3

a.       All electronic mail stored and presently contained in, or on behalf of, the

following electronic mail addresses and/or individual accounts: **send2victor@yahoo.com,**

**newpowerspt@yahoo.com, vcj716@aol.com and remkorch@aol.com.**

b.       All existing printouts from original storage of all of the electronic mail described

above in Section II (a);

c.       All transactional information of all activity of the electronic mail addresses and/or

individual accounts described above in Section II(a), including log files, dates, times, methods of

connecting, ports, dial-ups, and/or locations;

d.       All business records and subscriber information, in any form kept, pertaining to

the electronic mail addresses and/or individual accounts described above in Section II(a),

including applications, subscribers' full names, all screen names associated with the subscribers

and/or accounts, all account names associated with the subscribers, methods of payment,

telephone numbers, addresses, passwords, and detailed billing records; and

e.       All records indicating the services available to subscribers of the electronic mail

addresses and/or individual accounts described above in Section II(a).

**III. Information to be Further Copied by Law Enforcement Personnel**

a.       The following email from **send2victor@yahoo.com,**

  **newpowerspt@yahoo.com, vcj716@aol.com and remkorch@aol.com.**

  (1)      Electronic mail discussing athletic performance enhancing drugs, drug

          prices, drug administration methods, drug suppliers, the distribution and

          administration of performance enhancing drugs and clients who use

ATTACHMENT A                    Page 2 of 3

performance enhancing drugs.

(2)  Electronic mail discussing performance enhancing drug tests, including methods and techniques used to defeat performance enhancing drug tests and results from performance enhancing drug tests conducted.

(3)  Electronic mail discussing any financial matters involving Balco Labs, SNAC Systems, Victor Conte, James Valente, Emeric Delczeg, Greg Anderson or any other individual associated with those entities and individuals including employees, vendors, suppliers and clients.

b.  Existing printouts from original storage of those items described in Section III(a) above; and

c.  All of the records and information described above in Sections II(c), (d), and (e).

SEALED BY ORDER
OF THE COURT

FILED
JUL 25 2003

AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

### NORTHERN _____ DISTRICT OF _____ CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

EMAIL ACCOUNT:
send2victor@yahoo.com
Yahoo
701 1st Avenue
Sunnyvale California

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER:
**5 \| 03 156 PVT**

I _____ Jeff Novitzky _____ being duly sworn depose and say:

I am a(n) _____ Special Agent, Internal Revenue Service _____ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

EMAIL ACCOUNT: send2victor@yahoo.com
          Yahoo
          701 1st Avenue
          Sunnyvale California

in the _____ Northern _____ District of _____ California

there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment A which is incorporated herein by reference

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence of a crime; contraband, fruits of crime, or other items illegally possessed; property designed for use, intended for use, or used in committing a crime;

concerning a violation of Title _____ 18 & 21 _____ Section(s) _____ 1341, 1956, & 841 _____
The facts to support a finding of Probable Cause are as follows:

See attached affidavit and attachments

Continued on the attached sheet and made a part hereof.          ☒ Yes     ☐ No

Approved
As To
Form:
          AUSA: JEFF NEDROW

Sworn to before me, and subscribed in my presence

Signature of Affiant

Date _____ 7/25/03 _____          at     SAN JOSE, CA
                                              City and State

PATRICIA V. TRUMBULL, U.S. MAGISTRATE JUDGE

Name and Title of Judicial Officer          Signature of Judicial Officer

5 �your03   156 PVT

## AFFIDAVIT OF SPECIAL AGENT JEFF NOVITZKY IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jeff Novitzky, being first duly sworn, hereby depose and state as follows:

### Introduction

SEALED BY ORDER OF THE COURT

1.      This affidavit is submitted in support of a search warrant for electronic mail accounts controlled by the electronic mail providers Yahoo and America Online.  Yahoo is headquartered at 701 1st Avenue, Sunnyvale, California.  The Yahoo accounts to be searched are **newpowerspt@yahoo.com** and **send2victor@yahoo.com**, and are further described in the following paragraphs and in Attachment A.  America Online maintains a local office at 466 Ellis Street, Mountain View, California.  The America Online accounts to be searched are **vcj716@aol.com** and **remkorch@aol.com**.  These accounts are also further described in the following paragraphs and in Attachment A.  As set forth herein, there is probable cause to believe that on the computer systems of Yahoo and America Online, there exists evidence, fruits and instrumentalities of violations of Title 21 U.S.C. § 841 (distribution of anabolic steroids, a Schedule III controlled substance), Title 18 U.S.C. § 1341 (mail fraud), and the related money laundering of the illicit profits from those violations in violation of Title 18 U.S.C. § 1956 (money laundering).

### I. Affiant's Background

2.      I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), and have been so employed since 1993.  During my ten (10) years with IRS-CI, I have conducted and/or participated in hundreds of

Affidavit in Support of Search Warrant

criminal investigations involving income tax violations, money laundering violations and currency violations. I have participated in the execution of numerous search warrants and have written affidavits in support of search warrants on twenty-three (23) different locations. I have also written affidavits for seizure warrants on at least eleven (11) assets.

3.  In my training and experience, I have learned that Yahoo and America Online are companies that provide e-mail service and store electronic communications, including opened and unopened e-mail for their subscribers on their computers. I am aware that computers located at Yahoo and America Online contain information and other stored electronic communications belonging to unrelated third parties. Accordingly, this affidavit and application for search warrants seeks authorization solely to search the computer accounts and/or files by following the procedures described herein and in Attachment A.

## II. Search Procedure

4. In order to ensure that agents search only those computer accounts and/or files described in Attachment A, this affidavit and application for search warrant seeks authorization to permit employees of Yahoo and America Online to assist agents in the execution of this warrant. To further ensure that agents executing this warrant search only those computer accounts and/or files described in Attachment A the following procedures will be implemented:

Affidavit in Support of Search Warrant

a.    The agent executing this warrant shall serve the warrant upon Yahoo's headquarters and America Online's local office at the locations specified in the warrant;

b. In order to minimize any disruption of computer service to innocent third parties, the agent executing this warrant shall permit Yahoo and America Online, as the custodians of the computer files described in Attachment A, to locate the files, copy them onto removable electronic storage media or print them out as paper copies, and deliver the copies to the agent, who need not be present during this process. Yahoo and America Online employees will create an exact duplicate of the computer accounts and files described in Attachment A;

c. Yahoo and America Online employees will provide the exact duplicate in electronic form of the accounts and files described in Attachment A and all information stored in those accounts and files to law enforcement agents;

d. Law enforcement personnel will thereafter review the information stored in the accounts and files received from Yahoo and America Online employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

e. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo and America Online employees and will not further review the original duplicate absent an order of the Court.

Affidavit in Support of Search Warrant

### III.  Background Regarding Computers, the Internet, and E-Mail

5. The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

6. I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience and knowledge, I know the following:

a.      The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities.  In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet. The world wide web ("www") is a functionality of the Internet which allows users of the Internet to share information;

b.      With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world.  This connection can be made by any number of means, including modem, local area network, wireless and numerous other methods; and

c.      E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users.   When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted

Affidavit in Support of Search Warrant

to the subscriber's mail server, then transmitted to its final destination. A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

### IV. Yahoo and America Online

7.     Based upon my training and experience, and previous e-mail search warrants that I have served upon Yahoo and America Online, I have learned the following:

a.     Yahoo is a global Internet communications, commerce and media company, offering among other services, Internet e-mail hosting.

b.     Yahoo stores copies of sent and received e-mails on their computer servers for periods of time after the e-mails are sent or received by Yahoo e-mail account subscribers.

c.     America Online is an Internet Service Provider that provides Internet access, e-mail, instant messaging and personal web page hosting.

d.     America Online maintains IP connection logs for 60-90 days, instant messaging logs for 10 days, unread and sent e-mails for 28 days and read e-mail for 2 days.

Affidavit in Support of Search Warrant

## VI. Stored Wire and Electronic Communication Access

8. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

a. Title 18, United States Code, Section 2703(a) provides, in part:

A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

b. Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant...

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service –

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

Affidavit in Support of Search Warrant

(B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

c.      The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. 18 U.S.C. § 2703(c). No notice to the subscriber or customer is required. 18 U.S.C. § 2703(c)(2).

d.      Title 18, United States Code, Section 2711, provides, in part:

As used in this chapter –

(1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section;

(2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system; and

(3) the term 'court of competent jurisdiction' has the meaning assigned by section 3127, and includes any Federal court within that definition, without geographical boundaries.

e.      Title 18, United States Code, Section 2510, provides, in part:

(8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .

(14) "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

7 of 61

Affidavit in Support of Search Warrant

(15) "electronic communication service" means
any service which provides to users thereof the ability to send
or receive wire or electronic communications; . . .

(17) "electronic storage" means --

(A) any temporary, intermediate storage
of a wire or electronic communication incidental
to the electronic transmission thereof; and

(B) any storage of such communication by an
electronic communication service for purposes of
backup protection of such communication.

## VII. Probable Cause

9. This case was initiated in August of 2002, based upon the
development of information alleging that numerous "world-class" professional
athletes are illegally receiving anabolic steroids and other athletic performance-
enhancing drugs and having their steroid intake monitored by persons
associated with Balco Laboratories Inc., a blood testing laboratory located at
1520 Gilbreth Road in Burlingame, California. This information included
allegations that VICTOR CONTE JR., the owner and CEO of Balco Laboratories
Inc., JAMES VALENTE, the vice president of Balco Laboratories, GREG
ANDERSON, a personal trainer in the Burlingame, California area, and EMERIC
DELCZEG, a master's division bodybuilder, are all involved in illegal anabolic
steroid distribution and administration to several well known professional
athletes.

10. There is probable cause to believe that CONTE, VALENTE,
ANDERSON, and DELCZEG are possessing with intent to distribute, and

Affidavit in Support of Search Warrant

distributing, anabolic steroids in violation of federal law. Anabolic steroids are a

Schedule III controlled substance. The distribution of Schedule III drugs is illegal

except when such drugs are dispensed by a licensed medical doctor within the

bonds of a professional medical practice. Sections 802 and 841. 21 U.S.C.

Section 802(41)(A) defines "anabolic steroid" as "any drug or hormonal

substance, chemically and pharmacologically related to testosterone (other than

estrogens, progestins and corticosteroids) that promote muscle growth . . ."

Section 802(41)((A) includes a list of 27 specific substances included within the

definition, and concludes with a provision that broadly includes "any salt, ester,

or isomer of a drug or substance described or listed in this paragraph if that salt,

ester, or isomer promotes muscle growth."  It is a violation of federal narcotics

laws to possess with intent to distribute and distribute anabolic steroids. 21

U.S.C. Section 841(b)(1)(D). Hereafter in this affidavit, the term "steroids" refers

to anabolic steroids which fall under the statutory definition provided in Section

802(41)((A).

11.    In addition, as described below, probable cause exists to believe

that Balco Laboratories Inc., CONTE and VALENTE are engaged in a mail fraud

scheme specifically by marketing a scheme to distribute and administer drugs

that mask the presence of steroids in the blood and urine of athletes, and

fraudulently enable these athletes to pass drug tests administered by their

sports' governing bodies. As described in more detail in this affidavit, Balco

Laboratories, CONTE and VALENTE use the drug epitestosterone for this

Affidavit in Support of Search Warrant

purpose. An invoice, at least four business checks and three charges to

VALENTE's Balco Labs' American Express account exist and infer that Balco

Laboratories, CONTE and VALENTE caused the mailing of epitestosterone on

several occasions to the Balco Laboratories location at 1520 Gilbreth Road in

Burlingame, California.

### V. Investigation of Balco Laboratories

### A. Investigative Background

12.    This case was initiated in August of 2002, based upon the

development of information alleging that Balco Laboratories, a blood testing

laboratory located at 1520 Gilbreth Road, Burlingame, California, is illegally

distributing anabolic steroids to professional athletes and monitoring their

steroid intake. This information included allegations that VICTOR CONTE JR.,

the owner and CEO of Balco Laboratories Inc., JAMES VALENTE, the vice

president of Balco Laboratories, GREG ANDERSON, a personal trainer in the

Burlingame, California area, and EMERIC DELCZEG, a master's division

bodybuilder, are all involved in illegal anabolic steroid distribution and

administration to several well known professional athletes through Balco

Laboratories.

13.    This affidavit will present probable cause that CONTE,

VALENTE, ANDERSON, and DELCZEG are possessing with intent to distribute,

and distributing, anabolic steroids in violation of federal law. Anabolic steroids

are a Schedule III controlled substance. The distribution of Schedule III drugs is

Affidavit in Support of Search Warrant

illegal except when such drugs are dispensed by a licensed medical doctor within the bounds of a professional medical practice. Title 21 U.S.C. Section 802(41)(A) defines "anabolic steroid" as "any drug or hormonal substance, chemically and pharmacologically related to testosterone (other than estrogens, progestins and corticosteroids) that promotes muscle growth . . ." Section 802(41)((A) includes a list of 27 specific substances included within the definition, and concludes with a provision that broadly includes "any salt, ester, or isomer of a drug or substance described or listed in this paragraph if that salt, ester, or isomer promotes muscle growth." It is a violation of federal narcotics laws to possess with intent to distribute and distribute anabolic steroids under Title 21 U.S.C. Section 841(b)(1)(D) unless prescribed by a licensed medical doctor within the bounds of a professional medical practice. Hereafter in this affidavit, the term "steroids" refers to anabolic steroids which fall under the statutory definition provided in Section 802(41)((A).

14. In addition, as described below, probable cause exists to believe that Balco Laboratories Inc., CONTE and VALENTE are engaged in a mail fraud scheme specifically by marketing a scheme to distribute and administer drugs that mask the presence of steroids in the blood and urine of athletes, and fraudulently enabling these athletes to pass drug tests administered by their sports' governing bodies. As described in more detail in this affidavit, probable cause exists that Balco Laboratories, CONTE and VALENTE use the drug epitestosterone for this purpose. Several documents were obtained in this

Affidavit in Support of Search Warrant

investigation indicating that Balco Laboratories, CONTE and VALENTE caused

the mailing of epitestosterone on multiple occasions to the Balco Laboratories

location at 1520 Gilbreth Road in Burlingame, California.

## B. BALCO LABORATORY BACKGROUND

15.    I have received information from the State of California,

Department of Health Services that Balco Laboratories Inc., located at 1520

Gilbreth Road in Burlingame, California, is a registered laboratory testing facility,

authorized by the State of California to conduct routine chemistry, toxicology and

trace metal testing of blood and urine.  According to State Department of Health

Services representative Bea O'Keefe, VICTOR CONTE JR. is the registered

owner of the facility and Dr. Brian D. Halevie-Goldman is the registered medical

director of the laboratory.  Internet research has revealed that Dr. Halevie-

Goldman is a psychiatrist specializing in child and adolescent

psycopharmacology.  He currently works for the "Amen Clinic" in Fairfield,

California, a private medical clinic that specializes in innovative diagnosis and

treatment for a wide variety of neuropsychiatric, behavioral and learning

problems for children, teenagers and adults.

16.    On January 29, 2003, I spoke with Jaime Nazario, an employee of

the Drug Enforcement Administration (DEA) in San Jose, California.  Nazario ran

the names of VICTOR CONTE JR. and Dr. Brian Halevie-Goldman through an

indices of authorized and registered controlled substance distributors that the

DEA maintains.  Nazario informed me that neither CONTE nor Dr. Halevie-

Affidavit in Support of Search Warrant

Goldman are currently authorized or registered with the DEA to distribute or

prescribe controlled substances. Nazario further informed me that it is illegal for

a doctor or anyone else to distribute or prescribe a controlled substance without

authorization and registration with the DEA.

17.    SNAC System Incorporated is another business operated by

CONTE that is operated from the same location as Balco Laboratories Inc. As

advertised on its web-site, SNAC Systems Inc., "is a revolutionary mineral and

trace element supplementation program designed to maximize absorption and

utilization." The web-site professes that "rigorous exercise and stress result in

significant body losses of specific minerals and trace elements" and that SNAC

System products can help replenish those minerals and trace elements and help

individuals achieve better performance "in the workplace, as well as in the gym

and the athletic field." Through Internet research and the examination of

discarded trash from Balco Laboratories and SNAC Systems Inc., I have learned

that SNAC System sells and markets several legal nutritional supplements that

they allege help to increase athletic performance and recovery.

### C. BALCO & VICTOR CONTE INTERNET INFORMATION

18.    A web-site at "Balcolab.com" was located which contains

information and is a "home-page" for the business Balco Laboratories Inc. in

Burlingame, California. The web-site states that Balco is in the business of

"High tech nutritional assessment for Olympic athletes, weekend warriors and

even business executives." The site goes on to explain that through the use of

Affidavit in Support of Search Warrant

a machine called the ICP (inductively coupled plasma), selected essential

minerals, trace elements and toxic metals in a person's blood and urine can be

analyzed and deficiencies can be determined. The web-site further describes

that based upon those deficiencies, supplements can be recommended to those

people, the intake of which will increase athletic performance.

19.     The site contains a link to "Balco's Database of World Class

Olympic and Professional Athletes". In this link, approximately fifty (50)

professional athletes are claimed to be Balco Labs clients, including athletes

from various professional sports ranging from the National Football League,

National Basketball Association, as well as athletes competing in professional

bodybuilding, professional tennis, swimming and track and field. The site also

includes an e-mail contact with Balco at the e-mail address of

**conte@balcolab.com**.

### D. VICTOR CONTE NEWSGROUP POSTINGS

20.     Based upon an Internet query of the e-mail address

**conte@balcolab.com**, several postings with a return e-mail address of

**conte@balcolab.com** to a "Google" Internet newsgroup entitled

"misc.fitness.weights" were located. These posts were made over a several

year period from 1999 through 2003. A review of the contents of the

newsgroup "misc.fitness.weights" revealed that the majority of postings involve

the topics of weightlifting, bodybuilding, nutrition and steroids. In each of the

several dozen postings that I located from **conte@balcolab.com**, the author of

Goldman are currently authorized or registered with the DEA to distribute or

prescribe controlled substances. Nazario further informed me that it is illegal for

a doctor or anyone else to distribute or prescribe a controlled substance without

authorization and registration with the DEA.

17.     SNAC System Incorporated is another business operated by

CONTE that is operated from the same location as Balco Laboratories Inc. As

advertised on its web-site, SNAC Systems Inc., "is a revolutionary mineral and

trace element supplementation program designed to maximize absorption and

utilization." The web-site professes that "rigorous exercise and stress result in

significant body losses of specific minerals and trace elements" and that SNAC

System products can help replenish those minerals and trace elements and help

individuals achieve better performance "in the workplace, as well as in the gym

and the athletic field." Through Internet research and the examination of

discarded trash from Balco Laboratories and SNAC Systems Inc., I have learned

that SNAC System sells and markets several legal nutritional supplements that

they allege help to increase athletic performance and recovery.

### C. BALCO & VICTOR CONTE INTERNET INFORMATION

18.     A web-site at "Balcolab.com" was located which contains

information and is a "home-page" for the business Balco Laboratories Inc. in

Burlingame, California. The web-site states that Balco is in the business of

"High tech nutritional assessment for Olympic athletes, weekend warriors and

even business executives." The site goes on to explain that through the use of

Affidavit in Support of Search Warrant

a machine called the ICP (inductively coupled plasma), selected essential minerals, trace elements and toxic metals in a person's blood and urine can be analyzed and deficiencies can be determined. The web-site further describes that based upon those deficiencies, supplements can be recommended to those people, the intake of which will increase athletic performance.

19.     The site contains a link to "Balco's Database of World Class Olympic and Professional Athletes". In this link, approximately fifty (50) professional athletes are claimed to be Balco Labs clients, including athletes from various professional sports ranging from the National Football League, National Basketball Association, as well as athletes competing in professional bodybuilding, professional tennis, swimming and track and field. The site also includes an e-mail contact with Balco at the e-mail address of **conte@balcolab.com**.

### D. VICTOR CONTE NEWSGROUP POSTINGS

20.     Based upon an Internet query of the e-mail address **conte@balcolab.com**, several postings with a return e-mail address of **conte@balcolab.com** to a "Google" Internet newsgroup entitled "misc.fitness.weights" were located. These posts were made over a several year period from 1999 through 2003. A review of the contents of the newsgroup "misc.fitness.weights" revealed that the majority of postings involve the topics of weightlifting, bodybuilding, nutrition and steroids. In each of the several dozen postings that I located from **conte@balcolab.com**, the author of

Affidavit in Support of Search Warrant

the text of each message is listed as "Victor", "Victor Conte" or "VC". In these

postings, CONTE writes on several topics, many of which corroborate much of

the information developed in this investigation, specifically CONTE and Balco's

associations with professional athletes and illegal athletic performance-

enhancing drugs. Among these postings from CONTE from

**conte@balcolab.com** are the following statements and references to athletes

and performance enhancing drugs:

| Date of Posting | Statement |
|---|---|
| April 29, 2001 | Dear Bryce: The specific question that I have repeatedly asked Lyle is what world class athletes have you "provided consultation" for? Go back and read my post. I have "provided testing and consultation" and been paid a fee for such services to many elite athletes such as Marion Jones, Barry Bonds, John Elway, Dan Marino, Bill Romanowski, Bryce Paup, Michael Chang, the entire Denver Broncos Super Bowl Championship teams, the entire Miami Dolphins football team, the entire Seattle Super Sonics basketball team, etc., plus many pro bodybuilders including Milos Sarcev and Flex Wheeler just to name a couple. There are many, many more if you would like me to post their names. Am I able to quantify the benefit of my services to these athletes? No, I cannot. However, most of these athletes do continue to use my services year after year, so they must feel they are getting benefit. |
| April 13, 2001 | Dear Bryce: The "in crowd" that I am associated with includes Ronnie Coleman, Flex Wheeler, Milos Sarcev, Marion Jones, Barry Bonds and many more elite Olympic and professional athletes. |
| March 19, 2000 | Dear Will: I would appreciate your feedback regarding the cost issue. As you know, |

Affidavit in Support of Search Warrant

oxandrolone1 comes in 2.5 mg tablets, which cost somewhere between $1 and $4.80 (by prescription) per tablet. That means taking 150 mg per day (60 tablets) would cost somewhere between $60 and $288 per day. Who do you know that is willing to spend $1,800 to $8,640 per month on taking oxandrolone at 150 mg per day! Is it available for something less than $1.00 per tablet? Maybe I'm missing something.

March 18, 2000

Dear Mr. Roberts: What is the basis of your statement "oxandrolone at a sufficiently high dose, e.g. 150 mg/day, increases aggression pretty comparably to most stuff and gives reasonable but not outstanding mass gains?" Where is the published science to support this statement? There are 122 published oxandrolone studies to be found using medline.

March 13, 1999

Dear Ed: Are you aware that your baseline testosterone level of 256 ng/dL is a deficient level of total testosterone. The normal range used by Quest Diagnostics Laboratories (one of the most credible labs in the US for measuring testosterone levels) is 260 ng/dL to 1,000 ng/dL. This is a 2 standard deviation range and represents the center 95 out of 100 healthy males.

### E. Media Articles

21.     Media outlet archives were queried through the Internet in order

to gather further background evidence on CONTE and BALCO LABS. Several

articles were discovered relating to VICTOR CONTE's appearance on behalf of

C.J. HUNTER, a world class shot put thrower who is the former husband of

Olympic Gold Medalist sprinter MARION JONES, and whom CONTE claims in

the aforementioned newsgroup postings is a client of his as well. HUNTER

---

1 Oxandrolone is an oral anabolic steroid and classified as a Schedule III controlled substance

Affidavit in Support of Search Warrant

tested positive for the performance-enhancing drug nandrolone, an anabolic

steroid, shortly before the 2000 Summer Olympics in Sydney, Australia, while

under the care of his nutritionist, VICTOR CONTE. According to several media

articles located on the Internet, in a news conference that took place in Australia

preceding the 2000 Summer Olympics, HUNTER introduced VICTOR CONTE

JR. as his nutritionist. CONTE stated during the press conference that "CJ was

not using the anabolic steroid nandrolone. The positive test was the result of an

iron supplement he was taking."

22.    A "Flex Magazine" article entitled "Barry's Bond With Muscle"

details a relationship between San Francisco Giants outfielder BARRY BONDS,

VICTOR CONTE and GREG ANDERSON. The article details BONDS'

progression to the single-season home run record of 73 achieved in 2001. The

article states that "The first key move was hooking up with VICTOR CONTE,

noted nutrition expert-cum-chemist based at Balco Laboratories in Burlingame,

California. 'I met with Barry before spring training in 2001 and adjusted his

nutritional supplementation regimen to maximize muscle recovery, absorption of

minerals and protein synthesis,' says Conte." The article further states "Besides

working with Conte, Bonds collaborated with personal trainer GREG

ANDERSON on a weight training program geared to the specific needs of a

baseball player."

under Title 21 U.S.C. § 802.

Affidavit in Support of Search Warrant

23.     A Muscle and Fitness Magazine article entitled "The King of

Swing" from the June 2003 issue, details the involvement of CONTE and

ANDERSON with Barry Bonds' fitness and nutrition. The article states that since

the winter of 2000, Bonds has worked closely with San Francisco-based

nutritional consultant VICTOR CONTE of Balco Laboratories and that Greg

Anderson, his personal trainer, has worked with Bonds for the last five (5) years.

In the article, Bonds states, "Victor will call me to make sure I'm taking my

supplements, and my trainer Greg will sit near my locker and stare at me if I

don't start working out right away. I have these guys pushing me."

24.     An interview of CONTE was published in "Testosterone"

magazine, a publication that deals primarily with steroids and steroid issues. In

the article, published on November 13, 1998, CONTE is asked whether or not

he recommends growth hormone supplementation for older athletes. Human

growth hormone, while not a controlled substance under Title 21, is illegal to

administer without a prescription under State law. I have learned in my

investigation that human growth hormone is often used by bodybuilders and

athletes in conjunction with anabolic steroids in order to gain muscle mass and

strength. CONTE responded to the growth hormone question by stating "I don't

condone the use of anabolic steroids or growth hormone. However, I know a

number of athletes who use growth hormone, and most of them are reporting

tremendous benefits. A few NFL players who have been caught using anabolic

Affidavit in Support of Search Warrant

steroids have switched to using growth hormone by itself. Some of the older players in their mid-30's are also using growth hormone."

## F. Examination of Discarded Trash

25. Since September 3, 2002, I have performed a weekly examination of the discarded garbage of Balco Laboratories Inc., located at 1520 Gilbreth Road in Burlingame, California. I have regularly retrieved the discarded garbage from a public-access parking lot where it is placed for pickup. Over the past several months, I have retrieved numerous items from the discarded garbage of Balco Labs that corroborate the allegations of illegal anabolic steroid distribution by Balco Laboratories and CONTE to professional athletes. A partial listing of items retrieved from the discarded trash of Balco Laboratories at 1520 Gilbreth Road in Burlingame, California, along with the date the evidence was retrieved, is as follows:

- Torn, empty box of multiple vials of Serostin, a human growth hormone (9/3/02).

- Torn, empty box of 200 mg vial of testosterone2 (9/10/02).

- Empty pill container of Oxandrin3 (11/18/02).

- At least sixty-three (63) empty, one-use syringe wrappers in various sizes (9/3/02 through 7/14/03).

- Fed Ex International Air Waybill detailing a shipment of "prescription drug personal medication" from a pharmacy in Ontario, Canada to Victor Conte at 345 California Drive in Burlingame, CA. The total weight

---

2 Testosterone is an anabolic steroid and classified as a Schedule III controlled substance as listed in Title 21, U.S.C. § 802.

3 Oxandrin, a brand name of oxandrolone, which is an anabolic steroid and classified as a Schedule III controlled substance as listed in Title 21, U.S.C. § 802.

Affidavit in Support of Search Warrant

of the package is listed as 3 pounds with a declared value of $431.75. The shipment is dated 4/22/2003 (5/5/03).

* November/December 2002 issue of "Anabolic Insider", an underground steroid publication (12/16/02).

* Various small envelopes and letters from Kevin Toth, the world's #1 ranked shot putter in 2003. Each envelope has a return address of "Kevin & Laura Toth, 1622 Barlow Road, Hudson, OH, 44326." The envelopes are all small sized, just larger than a personal check. Among the letters are the following:

  * Vic, you are the man.
    I am ready.
    74'4"
    *indoor World Record
    *indoor World Champion
    Thank you so much.
    KT
    (11/18/02)

  * Vic, here is a check for the next cycl4 (sic).
    I need it by the end of the week.
    Thanx, Kevin.
    (12/16/02)

  * Thanx Vic,
    Kevin
    (12/30/02)

  * Vic, here is $350, $300 for next +
    $50 for what I owed for last.
    Thanx, Kevin.
    74.5, WR of future indoor.
    (2/3/03)

  * Thanx Vic,
    Kevin
    74.5 1/2
    March 2

4 A cycle is a common phrase used for the administration of anabolic steroids because the users typically cycle their use on an on and off basis so that the body will not shut down its natural production of testosterone.

Affidavit in Support of Search Warrant

1:30 p.m.5
(3/3/03)

- Two (2) personal notes from Regina Jacobs, professional track and field distance runner who set the indoor world 1500 meter record this year at 39 years old. The notes read:

  - Victor,
    Thank you for the help at nationals!
    Regina
    P.S.
    A bonus from "Team Jacobs" to
    "Team Balco" (3/24/03).

  - Victor...Jim...
    Just wanted to let you know I appreciate
    everything that you did. All that I have accomplished
    this season would not have been possible
    without your support. Thanks!! R. (3/24/03).

- VWR International packing list indicating a delivery of one 100-count package of 23-gauge syringes and one 100-count package of 25-gauge syringes to Balco Laboratories (10/14/02).

- Yellow post-it note listing human growth hormones Nutropin AQ and 'Somatropin, both substances with steroid-like strength enhancing features (4/28/03).

- Four (4) empty "pill-sheets" of "Omifin", a prescription clomid or anti-estrogen drug typically taken by steroid users after a steroid cycle to improve their recovery of natural testosterone production (12/16/02 through 1/13/03).

- One empty box of Epogen, a prescription erythropoetin that stimulates the production of oxygen carrying red blood cells and is commonly used by endurance athletes to increase stamina and athletic performance. The box once contained ten (10) 1.0 ml single use vials (1/13/03).

- Empty and shredded box of Procrit, a prescription epoetin used to increase red blood cell production and commonly used by endurance

---

5 On March 2, 2003, Kevin Toth won the men's shot put at the United States Indoor Track and Field Championships. On April 19, 2003, Toth threw the shot put 74' 4.5" to win the Kansas Relays. It is the farthest anyone has thrown the shot put in the world since 1990.

Affidavit in Support of Search Warrant

athletes to achieve better fitness. Box once contained twenty-five (25) 1 ml vials (3/31/03).

• Two (2) empty pills sheets of prescription diuretics, which are commonly used by bodybuilders to rid themselves of excess water or fluids to make their muscles stand out. It is also used to mask the presence of steroids in drug tests (1/13/03).

• Three (3) torn versions of a letter addressed to IAAF (International Association of Athletics Federations) and the USADA (United States Anti-Doping Agency) testing personel, disclosing allegations of steroid distribution by Trevor Graham, a renowned track and field coach (6/9/03). A picture of one version of this document, which was pieced back together, appears below:

Affidavit in Support of Search Warrant

**ATTENTION:**
IAAF and USADA testing personel
June 5, 2003

Trevor Graham, former coach of Marion Jones, is giving his IAAF and USATF athletes oral tesosterone undeconate from Mexico. Trevor is having a friend of Chandra Sturrup from the Bahamas named Andrew Tynes purchase this substance for his group in Mexico. Andrew lives in Laredo, Texas and he routinely goes over the border into Mexico to make the purchases. Oral testosterone undecontate will clear the body and be undetectable in urine in less than a week after discontinuing use. Trevor has his athletes compete not more than every two weeks. Trevor's protocol is to "hide" for at least 10 days (5 days to use and 5 days to clear) directly after a competition and then be available for testing for a few days before the next competition. If a urine sample was collected from any of Trevor's athletes within two days after a competition, they would likely test positive for T/E ratio. Trevor and his group are in the Bahamas at this time taking oral testosterone deconate in preparation for the US national trials. If USADA or IAAF would be willing to collect a urine sample from any of the athletes listed below, a postive test result would be likely.

The athletes currently receiving this banned substance from Trevor Graham include:

Latasha Colander-Richardson
Justin Gatlin
Chandra Sturrup
Calvin Harrison

Trevor has had several athletes previously test positive for banned substances including sprinter's Dennis Mitchell, Todd Long, Patrick Jarrett and Paralympic sprinter Brain Frasure.

Affidavit in Support of Search Warrant

•     Portion of an e-mail addressed to "Victor" that discusses characteristics
of athletic performance enhancing drugs, similar to anabolic steroids,
as well as their prices (9/16/02). A picture of this document appears
below:

Affidavit in Support of Search Warrant



X-Mailer:
X-MimeOLE: Produ

Dear Victor,

I apologize for not responding sooner, been *extremely busy.*

Invisible "BT"–is an injectable; works best with those whose endocrin
results, the more genetically gifted the athlete the more BT works; sir
definitely just not detectable. Cons of BT -- may exhibit mild propert

Invisible "NP"–is an injectable; works best on a high protein diet–
can be taken for 2 to 3 months. Pulsatile administration works w
NP -- very kind on liver values. Cons of NP -- Can encourage

Invisible "HD" –is a cream; works best taken 3 times per day. Sh
proprioreception. Some, although not all, notice a quick strength cur
effect occurs when taken on a high (greater than 8 per day) egg intake
to use and goes to work fast–like the first day. Cons of HD -- you go thr

$10 per vial for 51 to 100.  $8
"    "    "  .  $11 "
jar for 31 to 50.  $50 per jar fc

constantly changes and there are oth
want to do.

Affidavit in Support of Search Warrant

## G. Examination of Balco's Medical Waste

26.     Through an analysis of subpoenaed bank records belonging to

Balco Laboratories, Stericycle, a medical waste transport company used by

Balco was identified.  Several checks in Balco's bank account were made

payable to Stericycle.  Stericycle maintains a regional office in San Leandro,

California. A grand jury subpoena was issued to Stericyle for the medical waste

picked up from Balco Labs.  To date, seven (7) separate medical waste pick-

ups from Balco have been examined.  The following is a partial list of the items

retrieved with dates from the discarded medical waste of Balco Labs:

| Date | Items |
|------|-------|
| 12/18/02 | • Eight (8) used syringes<br>• One (1) vial of Epogen (prescription erythropoetin) |
| 1/13/03 | • Eleven (11) used syringes<br>• One (1) vial of testosterone (anabolic steroid) |
| 3/10/03 | • Eight (8) used syringes<br>• One (1) vial of unknown substance w/label removed |
| 4/7/03 | • Seven (7) used syringes<br>• Torn airline ticket receipt indicating a flight from London to San Francisco by Dwain Chambers, a world-class 100 meter dash runner and 2002 European athlete of the year. |
| 5/5/03 | • Eleven (11) used syringes<br>• Twenty-Seven (27) vials of Nutropin, a prescription human growth hormone.<br>• One (1) vial of Genotropin, a prescription human growth hormone.<br>• One (1) clear vial with no label. |
| 6/2/03 | • Twelve (12) used syringes. |

Affidavit in Support of Search Warrant

• Twenty-two (22) empty one-use syringe
wrappers.
• One (1) vial of Epocrit, a prescription
erythropoetin.

7/2/03

• Eight (8) used syringes.
• Two (2) vials with labels removed from them.

27.     The used syringes and vials that were retrieved from the

December 18, 2002, and January 13, 2003, examinations of medical waste,

were analyzed by the San Mateo County Sherriff's Office Forensic Laboratory

for their content. The laboratory was able to extract enough fluid from two (2)

syringes and one vial. One syringe and the vial tested positive for the presence

of testosterone, an anabolic steroid. The other syringe tested positive for the

presence of stanozolol, an anabolic steroid. Both testosterone and stanozolol

are listed as Scheduled III controlled substances under Title 21 U.S.C. § 802.

Additional syringes and vials from the other medical waste pick-ups have been

sent to the lab for analysis and the results are currently pending.

## H. Greg Anderson

28.     Ed Barberini, an agent with the San Mateo County Narcotics

Task Force (NTF), informed me that the NTF has received information from a

confidential informant that GREG ANDERSON is well known within the "steroid

community" as a steroid dealer and that his steroid clients include members of

the professional baseball team San Francisco Giants. Agent Barberini has

informed me that the confidential informant who provided this information was

charged and pleaded guilty to State felony steroid distribution charges a few

Affidavit in Support of Search Warrant

years ago. Since the charge and guilty plea, the informant has been providing information to the NTF on other individuals associated with steroids in an attempt to work off sentencing time in his criminal case. Agent Barberini has informed me that due to the cooperation provided by the informant, he has not done any jail time for his steroid conviction. The informant has never been paid by the NTF. Agent Barberini has informed me that the informant has been deemed a reliable informant.

29. The GREG ANDERSON identified by the NTF informant is the same GREG ANDERSON detailed in the aforementioned media articles in paragraphs 22 and 23, as the personal fitness trainer of Barry Bonds.

30. In October of 2002, I received a phone call from San Jose DEA special agent Doug James. Agent James informed me that the San Jose office of DEA had received an anonymous tip regarding an individual distributing anabolic steroids. The individual alleged that GREG ANDERSON was supplying steroids to several members of the San Francisco Giants.

31. ANDERSON's vehicle, a 1999 Chevy Tahoe with license plate "W8 GURU" has been observed on several occasions late in the evening in the parking lot of Balco Labs. On December 2, 2002, I observed ANDERSON exit the premises of Balco Labs alone at approximately 9:52 p.m. Just before his exit, all of the lights inside Balco were turned off. Upon exiting alone, ANDERSON locked the front door to Balco with a key in his possession. Also, on June 16, 2003, at approximately 7:15 p.m., ANDERSON's vehicle was

Affidavit in Support of Search Warrant

observed in the parking lot of Balco Laboratories along with the vehicles of

CONTE and JAMES VALENTE. At approximately 7:20 p.m., ANDERSON was

observed exiting Balco Labs and driving away in his vehicle.

    32.    During the aforementioned examinations of discarded trash at

Balco Labs at 1520 Gilbreth Road in Burlingame, California discussed in

paragraph 25, I retrieved several pieces of evidence that showed a connection

between Balco Labs, GREG ANDERSON and several major league baseball

players. This evidence along with the date that it was obtained is as follows:

- Fed Ex shipping receipt indicating a shipment by Greg Anderson to Benito Santiago, a current member of the San Francisco Giants. (12/16/02).

- FedEx package receipt from Jeremy Giambi, a major league baseball player currently with the Boston Red Sox, sent to Greg Anderson (1/13/03).

- FedEx package receipt from Greg Anderson sent to Jeremy Giambi (1/13/03).

- FedEx package receipt from Jeremy Giambi sent to Greg Anderson, Balco Labs, 1520 Gilbreth Road, Burlingame, California (2/17/03).

- FedEx package receipt from Marvin Bernard, a major league baseball player with the San Francisco Giants, sent to Greg Anderson at 1520 Gilbreth Road, Burlingame, California (2/17/03).

- Express Mail package receipt from Armando Rios, a major league baseball player with the Pittsburgh Pirates, and formerly with the San Francisco Giants, sent to Balco Labs to the attention of Greg Anderson (2/17/03).

- FedEx package receipt from Gary Sheffield, a major league baseball player with the Atlanta Braves, sent to Balco Labs (2/17/03).

- Two small white envelopes addressed only as "For Greg Anderson" and "For Greg Anderson-Only" (2/17/03).

Affidavit in Support of Search Warrant

- Fax from VICTOR CONTE at Balco Laboratories to Jim Schmaltz at "Weider" reading "Dear Jim, As briefly discussed, enclosed is the nutrition program and weight training program for Barry Bonds. Please call Victor and Greg directly to answer any questions and receive quotations. Victor Conte cell # 415 602 9993, Greg Anderson cell # 650 400 0481." (3/3/03).

- Torn Fed Ex receipt indicating a package sent to Greg Anderson of Snac Systems, from Jeremy of the Tampa Bay Devil Rays, a major league baseball team (4/7/03).

### I. Surveillance

33.    Surveillance conducted in this investigation has also established a connection between Balco Laboratories, GREG ANDERSON and professional athletes. During surveillance the following significant events were observed:

34.    On September 11, 2002, GREG ANDERSON, was observed arriving at Balco Laboratories in his Chevy Tahoe with the license plate of "W8 GURU". After just a few minutes inside the offices of Balco Labs, ANDERSON returned to his vehicle and proceeded northbound on Highway 101 towards San Francisco. ANDERSON was followed to San Francisco until he entered the players' parking lot area of Pacific Bell Park, home of the San Francisco Giants, past a gated and guarded entrance. A short time later, his vehicle was observed double-parked in front of several other cars inside the players' parking lot area. Less than two (2) hours later, ANDERSON's vehicle was observed back in Burlingame in the parking lot at 888 Hinckley Road, Burlingame, formerly World Gym and now Bay Area Fitness.

35.    On September 23, 2002, agents performed surveillance on

Balco Laboratories throughout the day.  At approximately 1:14 p.m., a white

Ford Excursion with Texas license plates "H66 DZH" arrived in the parking lot of

Balco Labs.  GREG ANDERSON exited the passenger side of the vehicle and a

white male, later identified as RANDY VELARDE, an infielder with Major League

Baseball's Oakland Athletics, exited the driver's side.  It was later determine that

this vehicle is registered to RANDY L. and JEANIE VELARDE of Midland,

Texas.  In the parking lot of Balco Labs, ANDERSON was observed introducing

VELARDE to CONTE and JAMES VALENTE, the vice president of BALCO

LABS.  The four (4) walked inside together into Balco Labs.  Approximately

seven (7) minutes later, the four reemerged from Balco and VELARDE and

ANDERSON drove off.  Neither VELARDE nor ANDERSON carried anything

away from Balco.

36.    On November 12, 2002, an unidentified black male arrived at

Balco Laboratories.  Although he wore a baggy sweatsuit, it was evident that the

individual was extremely muscular and a bodybuilder.  The black male entered

Balco Labs and returned to his vehicle approximately six (6) minutes later and

drove off.  He left Balco Labs with nothing in his hands.

37.    On November 27, 2002, and January 16, 2003, Gary Sheffield, a

professional baseball player with the Atlanta Braves, was observed arriving at

Balco Labs, entering the building and leaving the premises just five to ten

minutes later with nothing in his hands.

Affidavit in Support of Search Warrant

38.     On January 10, 2003, a large black male bodybuilder later identified as Raoul Fulcher, a professional bodybuilder, was observed arriving at Balco Labs. Fulcher spent approximately 10 minutes inside of Balco before exiting and leaving in his vehicle. He left with nothing in his hands.

39.     In January of 2003, on numerous occasions, GREG ANDERSON has been surveilled conducting weight training workouts with Barry Bonds, a member of the San Francisco Giants, and Gary Sheffield, a member of the Atlanta Braves, within the premises of Bay Area Fitness, a workout gym located at 888 Hinckley Road in Burlingame. The gym is approximately 100 yards from the location of Balco Laboratories.

40.     On April 18, 2003, Dwain Chambers, a world class track and field sprinter and 2002 European track and field athlete of the year, was observed entering Balco Laboratories. Approximately eight (8) minutes later, Chambers was observed leaving Balco Laboratories. Upon walking out of Balco, Chambers had his right pants leg rolled up to his kneecap. Chambers proceeded from Balco to Bay Area Fitness, a workout gym located around the corner from Balco Laboratories. During this time, GREG ANDERSON's vehicle, a Chevy Tahoe with license plate "W8GURU", was parked outside of Bay Area Fitness.

## J. Financial Analysis

41.     To date several federal grand jury subpoenas have been issued to financial institutions for bank records relative to VICTOR CONTE and his

Affidavit in Support of Search Warrant

businesses, Balco Laboratories and SNAC Systems Inc. Only a portion of those subpoenaed records have been received to date. The records that have been received to date, reflect a large amount of cash withdrawal activity by VICTOR CONTE over the last few years. The bank records received to date, reflect that from January of 2000 through September of 2002, CONTE withdrew in excess of $480,000 in currency from his personal and business accounts.

42.     Based upon the amount of bank records still outstanding, and the patterns and trends of cash withdrawals observed from records already received, the amount of currency withdrawn from the time period January of 2000 through September 2002, likely to greatly exceed the $480,000 confirmed cash withdrawal figure to date.

43.     During the surveillance of Balco Laboratories on September 23, 2002, agents followed VICTOR CONTE to the Broadway, Burlingame branch of Wells Fargo Bank. As CONTE approached the teller inside the bank she asked him "100's?" CONTE said yes as the teller took paperwork from him, stamped it and counted out $2,000 cash in $100 bills. After receiving the cash from the teller CONTE stated "See you tomorrow."

44.     Based upon my training and experience, and the training and experience of agents from the San Mateo County Narcotics Task Force (NTF), persons involved in purchasing steroids and other controlled substances on the black market usually make those purchases with cash in order to avoid a financial trail on those transactions. Additionally, based upon my training and

Affidavit in Support of Search Warrant

experience as a financial investigator, and the many businesses and

corporations that I have financially analyzed and investigated, I do not believe

that an individual with at least one (1) personal and two (2) corporate checking

accounts like VICTOR CONTE, would have a legitimate need for a large volume

of currency like CONTE appears to be generating. Multiple checks are written

from CONTE's corporate account for vendors, landlords, employees and utility

expenses, showing that he makes business payments with checks in his regular

course of business. CONTE's personal mortgage payments and car payments

are also made via checks.

45.    In addition to the frequent and large volume of currency

withdrawals observed through CONTE's accounts, CONTE makes numerous

deposits into a personal bank account held with Wells Fargo Bank consisting of

large checks from professional athletes. The following payments to CONTE by

professional athletes in the partial return of bank records received to date are

noted:

- $6,200.00 check deposited on 2/29/2000, from the bank account of
Julie and Bill Romanowski. Bill Romanowski is a professional football
player currently with the Oakland Raiders, and at the time of the deposit
was with the Denver Broncos.

- $2,100 check deposited on 6/1/2000, from the bank account of Kevin
Toth, the current #1 ranked shot putter in the world. As mentioned
earlier in this affidavit in paragraph 25, a note from Toth to CONTE was
located in Balco Labs' discarded trash which referred to a payment Toth
was making to CONTE for his next cycl (sic), a common term for
anabolic steroids.

Affidavit in Support of Search Warrant

- $7,350 check deposited on 9/8/2000, from the bank account of Mjones & Associates, a business associated with Marion Jones, the world's top female track and field sprinter.

- $1,100 check deposited on 1/18/2001, from the bank account of Bill Romanowski.

- $875 check deposited on 4/27/01, from the bank account of Tim Montgomery, the current men's 100 meter dash world record holder.

- $1,000 check deposited on 5/2/2001, from the bank account of Bill Romanowski.

- $750 check deposited on 8/31/01, from the bank account of Tarnesia Gardener, the wife of current Denver Broncos football player, Daryl Gardener

- $3,000 check deposited on 10/26/01, from the bank account of Bill Romanowski.

- $1,400 check deposited on 12/3/01, from the bank account of Bill Romanowski.

- $750 check deposited on 1/23/02, from the bank account of Tarnesia Gardener, the wife of current Denver Broncos football player, Daryl Gardener.

- $750 check deposited on 1/29/02, from the bank account of Kevin Toth.

- $120 check deposited on 3/27/02, from the bank account of Kevin Toth.

- $960 check deposited on 5/3/02, from the bank account of Zhanna Block, the current women's world champion 100 meter dash sprinter.

- $240 check deposited on 5/7/02, from the bank account of Kevin Toth.

- $120 check deposited on 5/30/02, from the bank account of Kevin Toth.

- $370 check deposited on 6/6/02, from the bank account of Eric Thomas, a 2000 Olympic 400 meter hurdles participant.

- $370 check deposited on 6/6/02, from the bank account of Regina Jacobs, the women's world record holder in the 1500 meter run.

Affidavit in Support of Search Warrant

Jacobs set the world record this year on February 1st, at an age of 39 years old.

- $500 check deposited on 6/6/02, from the bank account of Regina Jacobs.

- $195 check deposited on 8/14/02, from the bank account of Ramon Clay, the current United States 200 meter dash champion.

- $4,000 check deposited on 8/20/02, from the bank account of Bill Romanowski.

     **Numerous deposited checks made to CONTE's personal account from 10/18/2001 through August of 2002 are still outstanding.

46.     On the monthly statement relating to CONTE's personal bank account with Wells Fargo Bank, dated August 22, 2002, a deposit was made in the form of an international wire in the amount of $1,980.00. The wire originates from Barclays Bank and was sent by Dwain Chambers. As detailed earlier in paragraph 40, Dwain Chambers is a world-class 100 meter track and field sprinter who was voted track and field's European athlete of 2002, who has been observed frequenting Balco Laboratories.

47.     As noted in each of the above listed payments by athletes to CONTE, each one is deposited into CONTE's personal bank account, not into either one of his corporate bank accounts held in the name of Balco Laboratories Inc. and SNAC System Inc. In my training and experience as a financial investigator, it has been my experience that when a business earns revenue associated with the goods or services offered by that business, the deposit of that revenue is deposited into the business bank account, and not a personal account of the business's owner. My examination of the two (2)

corporate bank accounts belonging to Balco and SNAC Systems Inc., revealed

regular deposits of business receipts.

### K. Emeric Delczeg

48.     During the aforementioned surveillance of Balco Labs on

September 23, 2002, as discussed in paragraphs 35 and 40, a white male, later

identified as Emeric Delczeg, was observed spending several hours inside the

offices of Balco. Internet research revealed that DELCZEG is a 50-year-old

professional bodybuilder who currently competes in masters' bodybuilding

competitions.

49.     In the aforementioned interview of CONTE in the November 13,

1998 article of "Testosterone" magazine, detailed in paragraph 24, CONTE

states: "A few of the older athletes feel that GH (growth hormone)

supplementation has helped them extend their competitive career. I know a pro

bodybuilder named Emeric Delczeg who's 47 years of age who supplements

with GH (growth hormone), and he maintains a level of around 400 ng/ml. This

is the level of a man twenty years younger."

50.     On October 10, 2002, I received information from San Mateo

County Narcotics Task Force agent Ed Barberini that the same source

mentioned earlier in this affidavit in paragraph 28, who had provided information

on GREG ANDERSON, had provided them with information that EMERIC

DELCZEG was a steroid supplier to Balco Laboratories. The source told NTF

that DELCZEG, who is Bulgarian, obtains steroids and other performance

Affidavit in Support of Search Warrant

enhancing drugs from Europe and provides them to Balco in exchange for permission to sell a supplement on which Balco or its subsidiary, SNAC System Inc., owns licensing rights. The source told NTF that DELCZEG was currently in Europe to purchase steroids for Balco.

51.    United States Customs Special Agent Matt Van Dyke was contacted regarding any Customs information on DELCZEG. Special Agent Van Dyke provided me with information that DELCZEG had a shipment of twenty-five (25) ampules of steroids seized from a UPS hub in Louisville, Kentucky on June 25, 1996. Two documents found inside the shipment listed the supervising physician as Dr. James Buckley, 2100 Carlmont Drive, Belmont, CA. On June 26, 1998, law enforcement officials contacted DELCZEG about the seizure of the steroids. DELCZEG admitted ordering the steroid for his personal use and that he used the name of Dr. James Buckley to make the order look legitimate, but that Buckley was not involved in the importation of the steroids.

52.    Further information provided on DELCZEG by Special Agent Van Dyke was that DELCZEG entered the United States on a flight from Europe on October 9, 2002, the day before the NTF had informed me of their source's information that DELCZEG was in Europe to obtain steroids for Balco Labs. Upon entry into the United States, DELCZEG was referred to secondary inspection by Customs, however, no steroids or illegal property were found on his person or in his baggage. DELCZEG was further identified as having an

Affidavit in Support of Search Warrant

active import record and import number.  Special Agent Van Dyke informed me

that the import number is in the name of EMERIC DELCZEG and PAUL

BEZDEK, DBA Fitness Enterprise.  Special Agent Van Dyke provided me with

further information that BEZDEK, DELCZEG's business partner, had a steroid

seizure made from him in 1992.

53.    On October 21, 2002, an examination of the discarded trash

from the residence of EMERIC DELCZEG at 2711 All View Way in Belmont,

California was performed at the BFI transfer station in San Carlos, California.

Located within the discarded trash from DELCZEG's residence were two (2)

used syringes, a large medical needle and a clear vial with a small amount of

clear fluid.  Although the vial's contents were tested by the DEA lab in San

Francisco and no traces of a controlled substance were detected, I know that

syringes and vials of this nature are synonymous with anabolic steroid

paraphernalia, and that individuals who are taking anabolic steroids will often

inject other, non-controlled substances to increase the effectiveness of the

steroids.

54.    A business card was also located in the discarded trash of

EMERIC DELCZEG. The card reflects a business name of "Fitness Enterprises"

and an employee name of EMERIC DELCZEG.  Additionally, the e-mail address

of **edelczeg@aol.com** is listed on the card.

55.    During surveillance conducted on Balco Labs on November 12,

2002, DELCZEG was observed in the Balco Lab parking lot handling boxes

near his vehicle, a 1995 Mercedes with license plate 4EKP435. DELCZEG's

vehicle was observed in the Balco Labs parking lot for several hours.

Additionally, several items located in the discarded trash of Balco Labs,

including luggage tags and post-it notes, have DELCZEG's name on them.

56. Financial analysis, as detailed in paragraphs 41 through 47 of

this affidavit, has revealed numerous payments by CONTE to DELCZEG from

CONTE's SNAC Systems Inc. corporate account. The following payments

made from the Wells Fargo Bank SNAC System Inc. corporate account to

EMERIC DELCZEG were noted:

| Check Date | Amount | Destination |
|------------|--------|-------------|
| 2/24/99 | $1,600 | Cashed by Delczeg |
| 2/8/00 | $1,500 | Cashed by Delczeg |
| 2/14/00 | $1,984 | Cashed by Delczeg |
| 2/24/00 | $3,188 | Cashed by Delczeg |
| 3/13/00 | $1,200 | Cashed by Delczeg |
| 3/21/00 | $1,600 | Cashed by Delczeg |
| 4/5/00 | $3,600 | Cashed by Delczeg |
| 4/19/00 | $1,060 | Deposited to Delczeg personal account |
| 5/24/00 | $2,800 | Cashed by Delczeg |
| 6/16/00 | $4,900 | Cashed by Delczeg |
| 11/3/00 | $2,250 | Cashed by Delczeg |
| 12/1/00 | $1,640 | Cashed by Delczeg |

Affidavit in Support of Search Warrant

        1/24/01     $1,500        Cashed by Delczeg

*       Several months of records relating to the SNAC System Inc.
Wells Fargo Bank corporate account are still outstanding.

        57.    Based upon the deposit of one of the above checks to Delczeg's

personal account, an account held with Washington Mutual Bank, a grand jury

subpoena was issued for records relating to this account. Among the records

received on the account to date, were three (3) checks written by Delczeg in

July of 2002 to Anthony McDonald. In the bottom left portion of each check are

written the letters "HGH". I know the letters "HGH" to be synonymous with the

performance enhancing drug human growth hormone. As detailed in paragraph

25 of this affidavit, a torn and empty box of human growth hormone was located

in the discarded trash of Balco Laboratories on September 3, 2002 and a yellow

post-it note with the names of two human growth hormones, Nutropin AQ and

Somatropin was located in the discarded trash of Balco Laboratories on April

28, 2003. Also, as detailed in paragraph 26, twenty-eight (28) vials of human

growth hormone were found in Balco's discarded medical waste on May 5,

2003. While human growth hormone is not classified as a controlled substance,

I am aware that it has athletic performance enhancing benefits and is commonly

used by athletes to achieve greater muscle size and strength. Additionally,

under State law, human growth hormone requires a prescription for an

authorized medical use in order to be distributed. The checks from Delczeg to

Anthony McDonald are as follows:

Affidavit in Support of Search Warrant

| Check Number | Check Date | Amount | Notation |
|---|---|---|---|
| 1774 | 7/3/02 | $2,500.00 | HGH |
| 1784 | 7/12/02 | $2,400.00 | HGH |
| 1811 | 7/25/02 | $5,000.00 | HGH |

58.    Each of the above cancelled checks indicated that McDonald negotiated them for cash with an Arizona driver license. A criminal history check of McDonald revealed an extensive criminal history including felony convictions for theft, misdemeanor conviction for making a false reports and several other arrests for felony and misdemeanor violations including weapons charges. Additionally, I have received information from a United States Customs database that McDonald had 35 counterfeit Rolex watches seized from his residence in 1988 or 1989.

59.    A Federal Grand Jury subpoena was issued for records relating an American Express account held by Balco Laboratories in the name of JAMES J. VALENTE. Records from American Express received in response to that subpoena reveal several charges to VALENTE's account from "In Touch Pharmaceuticals" in Phoenix, Arizona. Public records research on "In-Touch Pharmaceuticals" reveals that the company's registered agent with the State of Arizona is the same Anthony McDonald as detailed in the above paragraph. The following is a summary of charges from "In-Touch Pharmaceutical" to VALENTE's Balco Labs' American Express account:

| Date | Amount |
|------|--------|
| 7/28/00 | $495.00 |
| 8/4/00 | $495.00 |
| 8/7/00 | $995.00 |
| 8/14/00 | $2500.00 |
| 8/14/00 | $2500.00 |
| 8/21/00 | $995.00 |

## L. Use of Epitestosterone to Fraudulently Mask Steroid Use

60.    During the examination of discarded trash from Balco

Laboratories, an invoice for the purchase of an unknown quantity of

epitestosterone was located that indicated the purchase and shipment of

epitestosterone to Balco Laboratories and Victor at 1520 Gilbreth Road in

Burlingame, California, from a company named Sigma.

61.    I contacted and spoke to Dr. Don Catlin, the medical director of

the UCLA Olympic Laboratory. Dr. Catlin explained to me that his laboratory is

the premier performance-enhancing drug testing facility in the United States.

Dr. Catlin's lab performs drug testing for the International Olympic Committee,

the National Football League and the National Collegiate Athletic Association

(NCAA).

62.    Dr. Catlin stated that the primary use for epitestosterone, a

purchase order made by Balco and CONTE for which is detailed above in

paragraph 60, is to fraudulently defeat testosterone (anabolic steroid) drug

testing. Catlin stated that the way that abnormal testosterone levels are

measured in a person is in a ratio against the epitestosterone levels in that

person's urine or blood. He stated that a normal testosterone to epitestosterone

Affidavit in Support of Search Warrant

ratio in a human is 1:1, but that most sports' governing bodies allow a 6:1 ratio

of testosterone to epitestosterone in order to account for some individuals'

natural abnormalities. Dr. Catlin explained that when an athlete is taking large

amounts of testosterone to enhance athletic performance, they will often inject

epitestosterone right before a steroid test is administered in order to even out

their ratio and fraudulently pass the test.

63.     Although epitestosterone is a biological form of testosterone, it

does not promote muscle growth and therefore is not a controlled substance as

defined in Title 21 U.S.C. Section 802.

## M. CONTE Epitestosterone Newsgroup Posting

64.     In addition to the newsgroup postings by VICTOR CONTE

displayed earlier in this affidavit in paragraph 20, CONTE made another

newsgroup posting specifically inquiring about the availability of epitestosterone.

This epitestosterone posting as well as a response from another newsgroup

member, is as follows:

From: Victor Conte (Conte@Balcolab.com):
Subject: Epitestosterone availability?
Newsgroups: misc.fitness.weights
Date: 1999/06/08

Does anyone know if epitestosterone is available from any source?

From:  Bill Roberts (wroberts@grove.ufl.edu)
Subject: Re: Epitestosterone availability?
Newsgroups: misc.fitness.weights
Date: 1999/06/08

Affidavit in Support of Search Warrant

Steraloids or Sigma.

You could also make it readily by tosylation of testosterone followed by hydrolysis. There may be another better method but that one works.

Thanks for posting, Victor: I'd forgotten about you and forgot to put your name into my new replacement killfile. This was a handy reminder.

However, keep in mind that it is a controlled substance.
-- Bill

65.    It should be noted that the purchase order found in Balco's trash that details an order of an unknown amount of epitestosterone by VICTOR at Balco Laboratories, is from Sigma, one of the two epitestosterone sources that Bill Roberts recommends to CONTE in the aforementioned posting.

66.    To date, a partial response to a grand jury subpoena has been received on a Balco Laboratories Inc. corporate bank account held with Washington Mutual Bank. Four (4) checks were located in Balco Lab's Washington Mutual Bank records that reflect payments made to Sigma-Aldrich, also known as Sigma, the company from which a purchase order shows CONTE ordered an unknown quantity of epitestosterone. Details of the checks are as follows:

| Check Date | Payee | Amount |
|---|---|---|
| 2/25/02 | Sigma-Aldrich | $271.54 |
| 8/22/02 | Sigma-Aldrich | $298.60 |
| 1/6/03 | Sigma-Aldrich | 298.42 |

Affidavit in Support of Search Warrant

3/28/03     Sigma-Aldrich          $315.31

67.   Additionally, records retained from the Federal Grand Jury

Subpoena served on American Express for Balco Labs' and JAMES

VALENTE's American Express account, as discussed in paragraph 61, reflect

additional charges from Sigma-Aldrich. The following charges were made on

Balco's/VALENTE's American Express card to Sigma-Aldrich:

| Charge Date | Amount |
|-------------|-----------|
| 4/8/02      | $271.36   |
| 5/22/02     | $298.66   |
| 11/12/02    | $298.54   |

**N. Payments to Quest Diagnostics Containing Notation "Steroid(s)"**

68.   In the subpoenaed bank records received to date from Balco

Labs' corporate account with Washington Mutual Bank, numerous checks

written from the Balco Labs account and signed by VICTOR CONTE JR. are

made payable to "Quest Diagnostics", a nationwide laboratory testing facility.

Several of these checks have the notation "steroids" written on them. At least

thirty-three (33) such checks to Quest Diagnostics, written during the time

period from September 13, 2000, through May 20, 2002, have been identified

with the notation "steroid(s)" on them. In addition to those thirty three (33),

another sixty-five checks (65) are written to Quest Diagnostics from the Balco

Labs account during the same time period and in similar amounts, which do not

have the notation "steroids" on them. I am aware through Internet research,

that certain Quest Diagnostics testing facilities perform blood and urine tests for

Affidavit in Support of Search Warrant

anabolic steroids, suggesting the possibility that CONTE is sending his athlete

clients' blood or urine samples to Quest in order to determine whether the

presence of steroids can be detected.

### O.  Barry Bonds "LabOne" Sample

69.     On March 3, 2003, I conducted an inspection of the discarded

trash outside of Balco Laboratories at 1520 Gilbreth Road in Burlingame,

California.  Among the documents and items seized, was an internal Balco

Laboratory document, which details specimens taken from patients along with a

date, time, accession number and physician name.  Over the course of

examining Balco's trash over the past six months, I have observed this type of

document on several occasions.  As detailed below, the specific document

seized on March 3, 2003, reflects that on February 5, 2003, at 9:30, patient

Barry Bonds had an "RBC" and "plasma" specimen taken under the physician

name of Goldman.   As detailed in paragraph 15 of this affidavit, Brian Halvie-

Goldman is the listed medical director of Balco Labs with the State of California

and works for Amen Clinic in Fairfield, California as a psychiatrist specializing in

child and adolescent psycopharmacology.  A copy of this document appears

below:

Affidavit in Support of Search Warrant

DATE DIGESTED: _2-13-05_    RUN # _____

| | Date | Time | Accession # | SPECIMEN CODE | PHYSICIAN | PATIENT NAME FIRST | LAST | PATIENT ID# | Fee Owe |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 01/31/03 | 9:30 | 98417 | R | HEDAYA | RONI | RUDELL | | |
| 2 | 01/31/03 | - | 98418 | P | | | | | |
| 3 | 01/31/03 | - | 98419 | U | | | | | |
| 4 | 2/4/03 | 11:18 | 98420 | R | RESK | MARK | OWENS | | |
| 5 | 2/4/03 | - | 98421 | P | | | | | |
| 6 | 2/4/03 | - | 98422 | B | | | | | |
| 7 | 2/5/03 | 9:30 | 98423 | R | GOLDMAN | BARRY | BONDS | | |
| 8 | 2/5/03 | - | 98424 | P | | | | | |
| 9 | 2/11/03 | 10:35 | 98425 | R | HEDAYA | JANE | LEE | | |
| 10 | 2/11/03 | - | 98426 | P | | | | | |
| 11 | 2/11/03 | - | 98427 | U | | | | | |
| 12 | 2/13/03 | 9:30 | 98428 | R | HEDAYA | ERIKA | JACKSON | | |
| 13 | 2/13/03 | - | 98429 | P | | | | | |
| 14 | 2/13/03 | - | 98430 | U | | | | | |

SPECIMEN TYPE CODE: B=HAIR R=RBC P=PLASMA S=BLOOD U=URINE S=SUPPLEMENT W=WATER

PAGE 349

70.    During the same inspection of discarded trash on Balco

Laboratories, I located a faxed document sent from Balco Labs to "LabOne" a

medical testing lab, which among other tests, offers testing for testosterone

levels in individuals. The document is labeled "affidavit" and states that a

specimen sent on February 5, 2003, and labeled as "Barry B." was mislabeled

and instead should read "Greg Anderson". The affidavit is signed by JAMES

48 of 61

Affidavit in Support of Search Warrant

VALENTE, who is the vice president of Balco Labs. As detailed in paragraph 22
and section "H" of this affidavit, GREG ANDERSON is Barry Bonds' personal
trainer. A copy of this document appears below:

71.   Although "LabOne" conducts testosterone (steroid) testing, it is
not clear from these two (2) documents what tests were being conducted on the

Affidavit in Support of Search Warrant

above referenced specimen. What is clear however, is that it appears likely that JAMES VALENTE is purposefully misrepresenting the source of the specimen sent to LabOne on February 5, 2003. As seen above in paragraph 61, Balco's internal document shows only two specimens taken on February 5, 2003, both of them from Barry Bonds. Nowhere on this document, or any other similar Balco Labs document that I have observed during the course of my investigation, have I seen GREG ANDERSON reflected as having a specimen taken by Balco Labs, suggesting a conscious effort to conceal Bonds' name being associated with a specimen that was sent for testing. This conduct is significant because of the potential media publicity and repercussions in the athletic community with having a high profile athlete such as Bonds using performance-enhancing drugs.

### Search Warrant on Conte's Yahoo E-Mail Account

72.     On June 10, 2003, U.S. Magistrate Judge Howard R. Lloyd issued a search warrant upon a Yahoo e-mail account belonging to VICTOR CONTE at **send2victor@yahoo.com**. The search warrant was issued based upon a probable cause affidavit that CONTE was using the account in furtherance of his illegal steroid distribution, mail fraud and related money laundering activities. As a result of the issuance of this search warrant, numerous e-mails were obtained which show CONTE communicating with athletes and coaches about steroids, defeating steroid testing, attempts to keep these activities covert and financial transactions. A sampling of e-mail content from this search warrant appears

below along with explanations regarding their significance immediately

thereafter:

---

From:        Victor Conte <send2victor@yahoo.com>
To:          <alcoach@hol.gr>
Date:        Tuesday, August 20, 2002 10:24 p.m.
Subject:     headsup

Dear Andreas:

I am sending you this email from a new more confidential email address. Please use this for all confidential communication. I need for you to advise Olga to discontinue using the clear. I recently found out that Trevor Graham, Tim Montgomery and John Smith sent a sample of the clear to the IOC testers on an anonymous basis. This is very unfortunate. I have someone on the inside that recently gave me the headsup regarding this matter. I will be getting more information shortly regarding exactly when they will be testing for it. However, it seems as though it may be either at the Grand Prix or possibly at the World Cup. Apparently, Trevor and company saw the performances of Zhanna and Dwain and realized that money was getting ready to be taken from Marion, Tim and Maurice and they became desperate. We might also want to somehow get this information to the coach for the greek atheltes Kenderis and Thanou so that nobody tests positive. They seem to be ready to charge athletes on a "related substances" charge. This is simply a result of them having a sample so that they can create a standard to identify the substance. This is why it is so important to work only with athletes that can be completely trusted. We already have a new one that we are working on that should be available in a couple of months. It is still okay for Olga to use the white cream. I will keep you informed as I get new information. I will respond to your questions about the SNAC products from the other email address. The good news is that we got the headsup in time to prevent any positive test results.

Best Regards,
Victor

---

73.    The "Dwain" and "Zhanna" referred to in the preceding e-mail are

likely Dwain Chambers, the track and field athlete referred to in paragraphs 40

and 46, and Zhanna Block, a world class women's 100 meter dash runner, and

both known client of CONTE's. This e-mail may also explain why the letter

addressed to the IAAF and USADA testing personnel, as shown in paragraph

25, was written. That letter gives a detailed account of Trevor Graham's steroid

distribution to his track and field athletes and appears likely to be a form of

retribution to the above described allegations by CONTE that GRAHAM

anonymously turned in a sample of his "clear" to the International Olympic

Committee testers.

---

From:       Victor Conte <send2victor@yahoo.com>
To:         Michelle Collins <collins400@hotmail.com>
Date:       Wed, Aug 28, 2003
Subject:    Re: Gel

Dear Michelle:

What does "trick from europe" mean? If you take testosterone by any delivery
system, i.e., oral, injection, patch or cream, it contains only testosterone and no
epitestosterone, therefore it will increase the T/E ratio and cause a positive test
result. Cream is the safest form to use simply because it will not cause a "spike"
in the testosterone level, it will gradually increase and gradually decrease.
However, during the time that the peak absorption occurs in the blood and then
thereafter, when it clears into the urine, it will cause a increase in the T/E ratio for
a time and could result in a positive test result. So, please explain how this is a
"trick from europe"? There would be a significant risk in using the gel. You
already have a safe and effective program, so why take the risk?

Best Regards,

Victor

P.S.   The lab said that you appeared to be dehydrated because you had an
elevated hematocrit and you know the reason why. You are going to run very
fast on Friday!

---

Affidavit in Support of Search Warrant

74.    Michelle Collins is the 2003 world indoor 200 meter dash champion.  The above e-mail was a response by CONTE after Collins sent him an e-mail stating that she had access to a testosterone gel.  As noted in paragraphs 60 through 67, epitestosterone is a substance used to fraudulently defeat steroid testing and documents indicate that Balco, CONTE and/or VALENTE have ordered it through the mail on at least seven (7) occasions in the last two years.  In the "P.S." section of the e-mail, CONTE refers to an Michelle Collins' elevated hematocrit and tells her "you know the reason why".  I am aware through my research that an "elevated hematocrit" is a thickening of the blood.  This is a side effect from anyone taking EPO, or erythropoetin.  As detailed in paragraph 25, erythropoetin is a prescription drug that stimulates the production of oxygen carrying red blood cells and is commonly used by athletes to increase stamina and athletic performance.  EPO, while a prescription drug, is not a controlled substance.

---

From:       Victor Conte <send2victor@yahoo.com>
To:         Andreas Linardatos <alcoach@hol.gr>
Date:       Wednesday, November 20, 2002
Subject:    Re: EPO

Dear Andreas:

How can I take advantage of the connections you have for the E without a lot of risk?  Any ideas?  Do you an Panos plan to come here any time soon?  We've changed some of the protocols for the L and C.  I am sure that the Dynepo is coming soon.  It is being held up by a lawsuit in England.  I know it will be coming sometime soon, so please keep checking on a regular basis.

Bests Regards,

Victor

P.S. The alphabet is I,E,S,G plus L=liquid, C=cream. L and C is what I gave you for your triple jumper. S is what they take before competition readily available in Greece. And remember that all emails are saved for a very long time, so be careful about how you say what you say. Searches for keywords like "anabolic" and many others are going on at all times by big brother.

---

75. The subject line of this e-mail is "EPO". As detailed in the previous

paragraph and in paragraph 25, erthropoetin is a prescription drug that

stimulates the production of oxygen carrying red blood cells and in commonly

used by athletes to increase stamina and athletic peformance. Through media

research I have learned that Dynepo, as referred to in the above e-mail, is a new

form of EPO for which no test currently exists. It is unknown what the other

letters stand for, although I am aware that anabolic steroids come in both a liquid

and cream form.

---

Andreas Linardatos <alcoach.hol.gr> wrote:

Dear Victor,

Please don't forget to send me your identity number so I can transfer with Western Union the money. Also I have given order to my bank to transfer to your bank account you gave me - Wells Fargo - the amount on the invoice. The left over I will send with Western Union.

I will have some questions from time to time that people are asking and I don't have always the answers. For example If a male is taking 25 mg Dianabol / 2 or 3 times a week, in 2 week cycles and 1 week off, how long does it take for him to be able to be clean?

Affidavit in Support of Search Warrant

People believe because I'm in the Nutrition business now that I have also answers for such themes. As you know from your own experience, the line is very thin between legal and non-legal supplementation. One more question: If a reading of an element (copper, chromium or iron etc etc) is low, for how long do you recommend extra supplementation with that specific element? Also do you have any new articles published?
Looking forward to your respond.
Best regards,
Andreas
Alcoach@hol.gr

---

76.    I have learned through media research that Andreas Linardatos is the former Greek national sprint coach and current coach of several Greek athletes. Dianabol, which is referred to by Linardatos in the above e-mail, is a brand name of Methandrostenolone, an anabolic steroid and listed Schedule III controlled substance under Title 21. Based upon the information provided by Linardatos regarding the financial transactions, it appears likely that he is planning to attempt to conceal a payment to CONTE. Linardatos states that he has CONTE's Wells Fargo account and will send the amount on the invoice to that and the "left over" will be sent with Western Union. This suggests not only a concealment intent on Linardatos' behalf but also on CONTE's, as it appears the "left over" amount owed was not categorized by CONTE on the invoice. It is my experience as a financial investigator that money transfers to bank accounts cause the recordations of such transactions which are kept indefinitely. Money sent via Western Union is more difficult to trace and false names can be used for the sender and receiver of the funds.

Affidavit in Support of Search Warrant

## Subject E-Mail Accounts

77.     The e-mail address accounts that this affidavit requests to be searched are the Yahoo e-mail accounts **send2victor@yahoo.com** and **newpowerspt@yahoo.com**, and the America Online e-mail accounts **vcj716@aol.com** and **remkorch@aol.com**. The following sections describes the significance of each e-mail account and summarizes the probable cause that each account is being used in furtherance of the criminal violations in this investigation:

• **send2victor@yahoo.com**

> Subpoenaed Yahoo records show that the e-mail address **send2victor@yahoo.com** is subscribed to by VICTOR CONTE. As detailed in paragraphs 72 through 76 of this affidavit, a previous federal search warrant was executed upon this account on June 10, 2003, and resulted in the collection of dozens of e-mails where CONTE is communicating with athletes and coaches regarding performance-enhancing drugs, the fraudulent defeating of drug tests and the possible concealment of financial transactions. Since approximately one and one-half months has passed since the search warrant, e-mail communication to and from CONTE during that time may now be available that hasn't been examined.

- **newpowerspt@yahoo.com**

    Subpoenaed Yahoo records show that the e-mail address

    **newpowerspt@yahoo.com** is subscribed to by GREG ANDERSON of

    Burlingame, California. NTF agent Ed Barberini has provided me with

    GREG ANDERSON's business card, which list his business's name as

    "New Power Strength Performance Training" and the e-mail address of

    **newpowerspt@yahoo.com**. Further subpoenaed records from Yahoo

    show that this account was logged onto seven (7) times between June

    20, 2003 and June 30, 2003. As detailed in paragraphs 28 through 40

    of this affidavit, ANDERSON is alleged by both a reliable and an

    anonymous source to be a steroid dealer and has been surveilled on

    several occasions with professional athletes and at Balco Laboratories.

- **vcj716@aol.com**

    Subpoenaed America Online records show that the e-mail address

    **vcj716@aol.com** is subscribed to by VICTOR CONTE JR of 345

    California Dr., #22, Burlingame, CA. This is a known address used by

    the VICTOR CONTE in this investigation. Usage records received from

    American Online show that e-mail was accessed on this account thirty-

    two (32) times from the time period June 25, 2003 through July 15,

    2003. Among the e-mails received via a search warrant on CONTE's

    Yahoo e-mail address **send2victor@yahoo.com** was an e-mail that

    was sent from CONTE's America Online e-mail address at

Affidavit in Support of Search Warrant

**vcj716@aol.com**.  The specific e-mail, which was sent on June 9, 2003, contains a subject line of "test from new sub10" and states only "Howyalikeit".  I am aware that an Internet message board exists called "Sub10" that deals with the subject of track and field and more specifically the sprint competitions.  Based upon e-mail content obtained via a federal search warrant on CONTE's Yahoo e-mail account, his usage frequency on this America Online e-mail account and the probable cause presented in this affidavit of CONTE's involvement in criminal activity, I believe there to be probable cause that CONTE uses the e-mail account **vcj716@aol.com** in furtherance of his criminal activity.

· **remkorch@aol.com**

Subpoenaed America Online records show that the e-mail address **remkorch@aol.com** is subscribed to by Remi Korchemny of Castro Valley, California.  Through Internet research, I am aware that Remi Korchemny is a renowned world-class track and field coach who has been coaching track athletes for the last fifty years.  Before immigrating to the United States, Korchemny was previously the head track and field coach for the Soviet Union.  Korchemny is currently the track coach for Dwain Chambers, who as detailed in paragraphs 40 and 46, is associated with both Balco Labs and GREG ANDERSON, and wired $1980.00 to VICTOR CONTE's personal account on August 22, 2002.

Affidavit in Support of Search Warrant

Additionally, Korchemny is the coach of Kelli White, the current United

States champion in both the 100 and 200 meter dash.  Documents

located in Balco's trash, including orders for blood tests on Kelli White,

have also linked her to Balco Labs and CONTE.  Finally, a trap and

trace device, which is currently in place on another of VICTOR

CONTE's e-mail accounts at **balcolab@earthlink.net**, shows that on

both June 27, 2003, and July 15, 2003, CONTE received e-mails from

**remkorch@aol.com**.  Because the trap and trace order authorizes only

the disclosure of e-mail header information, the contents of this e-mail

are currently unknown.  However, based upon my knowledge that

America Online routinely keeps sent e-mails for 28 days, the e-mail still

likely exists on America Online's servers.  Addtionally, based upon the

e-mail communications between CONTE and other coach and athletes

that were obtained via a search warrant on CONTE's e-mail account at

**send2victor@yahoo.com**, it is clear that CONTE communicates via e-

mail with coaches regarding performance-enhancing drugs.

## CONCLUSION

78.    I believe that the foregoing facts presented in this affidavit

present probable cause to believe that evidence of the involvement of VICTOR

CONTE, JAMES VALENTE, EMERIC DELCZEG, GREG ANDERSON and

others, in committing violations of Title 21 U.S.C. § 841, the possession with

intent to distribute, and distribution, of anabolic steroids, Title 18 U.S.C. § 1341,

Affidavit in Support of Search Warrant

mail fraud involving the use of epitestosterone to conceal the presence of anabolic steroids in athletes' urine and blood, and Title 18 U.S.C. § 1956, the money laundering of profits earned from the drug distribution and mail fraud activities, will be found on the e-mail accounts used by CONTE the president of Balco Labs at **send2victor@yahoo.com**, and **vcj716@aol.com**, the e-mail account used by GREG ANDERSON at **newpowerspt@yahoo.com** and the e-mail account used by Remi Korchemny at **remkorch@aol.com**.

79.    Specifically, this affidavit has presented evidence of illegal anabolic steroid distribution to professional athletes, use of the mail to purchase a substance used in the fraudulent defeat of athletic performance enhancing drug tests and large cash withdrawal activity combined with the deposit of large checks from numerous professional athletes into CONTE's personal account, constituting illegal money laundering transactions. In addition this affidavit has presented evidence that e-mail accounts are used by CONTE and others in furtherance of their illegal activities. Finally this affidavit has shown that: the e-mail accounts **send2victor@yahoo.com** and **vcj716@aol.com** are registered to and used by VICTOR CONTE; the e-mail account **newpowerspt@yahoo.com** is registered and used by GREG ANDERSON; and the e-mail account **remkorch@aol.com** is registered and used by Remi Korchemny, a track and field coach of athletes associated with CONTE and ANDERSON.

Affidavit in Support of Search Warrant

80. Based upon these facts, I believe that probable cause exists to believe that VICTOR CONTE, GREG ANDERSON, and Remi Korchemny are actively using their e-mail accounts at send2victor@yahoo.com, vcj716@aol.com, newpowerspt@yahoo.com, and remkorch@aol.com respectively, in furtherance of the above-stated violations, and that evidence of those violations is therefore likely to be found on those respective e-mail accounts.

81. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this affidavit was executed at San Jose, California, on July ___, 2003.

Jeff Novitzky
Special Agent
Internal Revenue Service
Criminal Investigation

Sworn to and subscribed in my presence this 25 day of July , 2003.

Patricia V. Trumbull
Chief United States Magistrate Judge
Northern District of California

Affidavit in Support of Search Warrant

## ATTACHMENT A

### I. Search Procedure

a.       The search warrant will be presented by law enforcement agents to the personnel of Yahoo located at 701 First Avenue, Sunnyvale, California, and America Online located at 466 Ellis Street, Mountain View, California. Yahoo and America Online personnel will be directed to isolate those accounts and files described in Section II below;

b.       In order to minimize any disruption of computer service to innocent third parties, Yahoo and America Online employees will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.       Yahoo and America Online employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to law enforcement agents who need not be present during the duplication of the files;

d.       Law enforcement personnel will thereafter review the information stored in the accounts and files received from the Yahoo and America Online employees and then identify and copy only the information contained in those accounts and files which is authorized to be further copied as described in Section III below; and

e.       Law enforcement personnel will then seal the original duplicate of the accounts and files received from Yahoo and America Online employees and will not further review the original duplicate absent an order of the Court.

### II. Files and Accounts to be Copied by Yahoo and America Online Employees

a.      All electronic mail stored and presently contained in, or on behalf of, the following electronic mail addresses and/or individual accounts: **send2victor@yahoo.com, newpowerspt@yahoo.com, vcj716@aol.com and remkorch@aol.com.**

b.      All existing printouts from original storage of all of the electronic mail described above in Section II (a);

c.      All transactional information of all activity of the electronic mail addresses and/or individual accounts described above in Section II(a), including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

d.      All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above in Section II(a), including applications, subscribers' full names, all screen names associated with the subscribers and/or accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, passwords, and detailed billing records; and

e.      All records indicating the services available to subscribers of the electronic mail addresses and/or individual accounts described above in Section II(a).

**III. Information to be Further Copied by Law Enforcement Personnel**

a.      The following email from **send2victor@yahoo.com, newpowerspt@yahoo.com, vcj716@aol.com and remkorch@aol.com.**

(1)      Electronic mail discussing athletic performance enhancing drugs, drug prices, drug administration methods, drug suppliers, the distribution and administration of performance enhancing drugs and clients who use

ATTACHMENT A          Page 2 of 3

performance enhancing drugs.

(2)     Electronic mail discussing performance enhancing drug tests, including methods and techniques used to defeat performance enhancing drug tests and results from performance enhancing drug tests conducted.

(3)     Electronic mail discussing any financial matters involving Balco Labs, SNAC Systems, Victor Conte, James Valente, Emeric Delczeg, Greg Anderson or any other individual associated with those entities and individuals including employees, vendors, suppliers and clients.

b.     Existing printouts from original storage of those items described in Section III(a) above; and

c.     All of the records and information described above in Sections II(c), (d), and (e).

*C*

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

GJ 01-1
9102567 F-233

# United States District Court

**NORTHERN**  _____ **DISTRICT OF** **CALIFORNIA**

TO: Custodian of Record
Washington Mutual Bank
Attention: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON  ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court Federal Building & Courthouse 450 Golden Gate Avenue San Francisco, CA 94102 | Grand Jury Room A |
| | DATE AND TIME September 18, 2002 at 9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

See Attachment.

VOLUNTARY COMPLIANCE WITH THIS SUBPOENA WILL BE COMPLETE WHEN YOU PROVIDE THE REQUESTED MATERIALS TO THE AGENT SERVING THIS SUBPOENA. IF THE DOCUMENTS ARE TIMELY PROVIDED, NO APPEARANCE WILL BE NECESSARY.

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

U.S. MAGISTRATE JUDGE OR CLERK OF COURT

**RICHARD W. WIEKING**

(By) Deputy Clerk

Richard W. Wieking

DATE

August 29, 2002

This subpoena is issued on application
of the United States of America
KEVIN V. RYAN
United States Attorney

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
MILES EHRLICH, AUSA
U.S. Attorney's Office, 450 Golden Gate Ave., Box 36055
San Francisco, CA 94102    (415)436-6840
SA Jeff Novitsky at (408) 817-6938

## Attachment to Subpoena

Washington Mutual Bank
Attn.: Subpoena Processing Center

1.    Any and all records during the period from 1/1/1998 through the present referring to and/or relating to accounts associated with:

**VICTOR CONTE JR.**          **BALCO LABORATORIES INC.**
**DOB: 07/10/50**              **1520 Gilbreth Avenue**
**SSN: 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**          **Burlingame, CA  94010**

**\*\*Known Account:  017900001929096**

This documentation shall include, by way of example, any and all of the following items:

2.    Account applications and signature cards, monthly and/or quarterly statements, deposit slips (front and back), deposited items (front and back), cancelled checks (front and back), debit and credit memos, documents relating to electronic/wire transfers or deposits and any correspondence relating to such accounts.

3.    Any and all records relating to cashier's checks purchased by the above mentioned individual and entity during the period from 1/1/98 through the present.

4.    Any and all records relating to safe deposit box rentals by the above mentioned individual and entity, including, but not limited to, rental contracts and entry records.

**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

D

AO 110 (Rev. 12/89) Subpoena to Testify Befor        and Jury

GJ 01-1
9102567 F-233

*In person*
*Sept 19th*

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO: Custodian of Records
Wells Fargo Bank
Attention: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

### SUBPOENA FOR:

☐ PERSON    ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court | Grand Jury Room A |
| Federal Building & Courthouse | DATE AND TIME |
| 450 Golden Gate Avenue | |
| San Francisco, CA 94102 | October 16, 2002 at 9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

See Attachment.

VOLUNTARY COMPLIANCE WITH THIS SUBPOENA WILL BE COMPLETE WHEN YOU PROVIDE THE REQUESTED MATERIALS TO THE AGENT SERVING THIS SUBPOENA. IF THE DOCUMENTS ARE TIMELY PROVIDED, NO APPEARANCE WILL BE NECESSARY.

02 SEP 23 AM 7: 46

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **RICHARD W. WIEKING** | |
| (By) Deputy Clerk | |
| *Richard W. Wieking* | September 19, 2002 |

| This subpoena is issued on application of the United States of America | ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER: |
|---|---|
| KEVIN V. RYAN | MILES EHRLICH, AUSA |
| United States Attorney | U.S. Attorney's Office, 450 Golden Gate Ave., Box 36055 |
| | San Francisco, CA  94102      (415)436-6840 |
| | SA Jeff Novitsky at (408) 817-6938 |

## Attachment to Subpoena

Wells Fargo Bank
Attn.: Subpoena Processing Center


1.    Any and all records during the period from 1/1/1998 through the present referring to and/or relating to Wells Fargo accounts:

**0426002556**
**and**
**0167483981**


This documentation shall include, by way of example, any and all of the following items:

2.    Account applications and signature cards, monthly and/or quarterly statements, deposit slips (front and back), deposited items (front and back), cancelled checks (front and back), debit and credit memos, documents relating to electronic/wire transfers or deposits and any correspondence relating to such accounts.


**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

E



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

280 South First Street, Room 371                    (408) 535-5061
San Jose, California 95113                          FAX:(408) 535-5081

February 12, 2003

Wells Fargo Bank
Attn: Subpoena Processing

      Re:    Grand Jury Investigation
             Request for Non-Disclosure

Dear Sir or Madam:

      Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

      In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

                        Very truly yours,

                        KEVIN V. RYAN
                        United States Attorney

                        JEFF NEDROW
                        Assistant United States Attorney

JN:sk
Enclosure
2002R01596

2002R1596
GJ 01-2 SJ

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO: Wells Fargo Bank
Attn: Subpoena Processing

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON   ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court United States Courthouse 280 South First Street San Jose, CA 95113 | As directed by the clerk of court |
| | **DATE AND TIME** |
| | March 12, 2003 at 9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

311-5042

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | | DATE |
|---|---|---|
| **RICHARD W. WIEKING** | | |
| (By) Deputy Clerk *Richard W. Wieking* | | February 12, 2003 |

| This subpoena is issued on application of the United States of America KEVIN V. RYAN United States Attorney | ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER: AUSA Jeff Nedrow U.S. Attorney's Office, 280 S. First Street, Room 371 San Jose, CA  95113        (408)535-5045 SA Jeff Novitzky  - IRS CID  (408)817-6938 |

## Attachment to Subpoena

Wells Fargo Bank
Attn.: Subpoena Processing Center


1.      Any and all records during the period from 1/1/1999 through the present
referring to and/or relating to accounts associated with:

> **Balco Laboratories Inc.**
> **1520 Gilbreth Road**
> **Burlingame, CA  94010**

**\*\*Known Account:  0167-071869**

This documentation shall include, by way of example, any and all of the following
items:

2.      Account applications and signature cards, monthly and/or quarterly
statements, deposit slips (front and back), deposited items (front and back),
cancelled checks (front and back), debit and credit memos, documents relating to
electronic/wire transfers or deposits and any correspondence relating to such
accounts.

3.      Any and all records relating to cashier's checks purchased by the above
mentioned individual and entity during the period from 1/1/99 through the
present.

4.      Any and all records relating to safe deposit box rentals by the above
mentioned individual and entity, including, but not limited to, rental contracts and
entry records.


**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*280 South First Street, Room 371*          *(408) 535-5061*
*San Jose, California 95113*          *FAX:(408) 535-5081*

March 13, 2003

Washington Mutual Bank
Subpoena Processing

      Re:    Grand Jury Investigation
             Request for Non-Disclosure

Dear Sir or Madam:

        Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

        In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

        Very truly yours,

        KEVIN V. RYAN
        United States Attorney

        JEFF NEDROW
        Assistant United States Attorney

JN:sk
Enclosure
2002R01596

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

2002R1596
GJ 03-1 SJ

# United States District Court

**NORTHERN·** _____ **DISTRICT OF** **CALIFORNIA**

TO:  Washington Mutual Bank
Attn: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON  ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court<br>United States Courthouse<br>280 South First Street<br>San Jose, CA  95113 | As directed by the clerk of court |
| | DATE AND TIME |
| | April 8, 2003 at  9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | | DATE |
|---|---|---|
| **RICHARD W. WIEKING** | | |
| (By) Deputy Clerk<br>*Richard W. Wieking* | | March 13, 2003 |

This subpoena is issued on application of the United States of America
KEVIN V. RYAN
United States Attorney

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
AUSA Jeff Nedrow
U.S. Attorney's Office, 280 S. First Street, Room 371
San Jose, CA  95113        (408)535-5045

OK
AUSA *Jeff Nedrow*

## Attachment to Subpoena

Washington Mutual Bank
Attn.:  Subpoena Processing Center

1.      Any and all records during the period from 1/1/2000 through the present
referring to and/or relating to accounts associated with:

### Greg F. Anderson
### SSN: 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

**Known Account:  4883036620
(In addition to this account, please check for other accounts under this
name and SSN)

This documentation shall include, by way of example, any and all of the following
items:

2.      Account applications and signature cards, monthly and/or quarterly
statements, deposit slips (front and back), deposited items (front and back),
cancelled checks (front and back), debit and credit memos, documents relating to
electronic/wire transfers or deposits and any correspondence relating to such
accounts.

3.      Any and all records relating to cashier's checks purchased by the above
mentioned individual and entity during the period from 1/1/2000 through the
present.

4.      Any and all records relating to safe deposit box rentals by the above
mentioned individual and entity, including, but not limited to, rental contracts and
entry records.

**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

G



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

| | |
|---|---|
| *280 South First Street, Room 371* | *(408) 535-5061* |
| *San Jose, California 95113* | *FAX:(408) 535-5081* |

May 19, 2003

Wells Fargo Bank
Attn: Subpoena Processing Center

   Re: Grand Jury Investigation
     Request for Non-Disclosure

Dear Sir or Madam:

   Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

   In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

        Very truly yours,

        KEVIN V. RYAN
        United States Attorney

        JEFF NEDROW
        Assistant United States Attorney

JN:sk
Enclosure
2002R01596

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

2002R1596
GJ 03-1 SJ

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO:  Wells Fargo Bank
Attn: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON   ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court United States Courthouse 280 South First Street San Jose, CA 95113 | As directed by the clerk of court |
| | DATE AND TIME |
| | June 18, 2003 at 9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

311-6135

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | | DATE |
|---|---|---|
| **RICHARD W. WIEKING** | | |
| (By) Deputy Clerk *Richard W. Wieking* | | May 19, 2003 |

This subpoena is issued on application of the United States of America
KEVIN V. RYAN
United States Attorney

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
AUSA Jeff Nedrow
U.S. Attorney's Office, 280 S. First Street, Room 371
San Jose, CA 95113       (408)535-5045
SA Jeff Novitzky - IRS CID  (408)817-6938

## Attachment to Subpoena

Wells Fargo Bank
Attn.: Subpoena Processing Center

1.      Any and all records during the period from **September 1, 2002 through May 31, 2002,** referring to the following Wells Fargo Bank accounts:

> Victor Conte Jr.
> 345 California Drive, #22
> Burlingame, CA  94010
> **Account Number: 0167-483981**

> Snac System Inc.
> 345 California Drive, #34
> Burlingame, CA  94010
> **Account Number: 0426-002556**

This documentation shall include, by way of example, any and all of the following items:

2.      Account applications and signature cards, monthly and/or quarterly statements, deposit slips (front and back), deposited items (front and back), cancelled checks (front and back), debit and credit memos, documents relating to electronic/wire transfers or deposits and any correspondence relating to such accounts.

3.      Any and all records relating to cashier's checks purchased from September 1, 2002 through May 31, 2003, by the above mentioned individual and entity during the period from S through the present.

4.      Any and all records relating to safe deposit box rentals by the above mentioned individual and entity, including, but not limited to, rental contracts and entry records.


**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

H



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

*280 South First Street, Room 371*           *(408) 535-5061*
*San Jose, California 95113*          *FAX:(408) 535-5081*

May 19, 2003

Washington Mutual Bank
Attn: Subpoena Processing Center

        Re:     Grand Jury Investigation
                <u>Request for Non-Disclosure</u>

Dear Sir or Madam:

        Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

        In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

                    Very truly yours,

                    KEVIN V. RYAN
                    United States Attorney

                    JEFF NEDROW
                    Assistant United States Attorney

JN:sk
Enclosure
2002R01596

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

2002R1596
GJ 03-1 SJ

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO:  Washington Mutual Bank
     Attn: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON    ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court United States Courthouse 280 South First Street San Jose, CA  95113 | As directed by the clerk of court |
| | DATE AND TIME |
| | June 18, 2003 at  9:30am |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

311-6136

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **RICHARD W. WIEKING** | |
| (By) Deputy Clerk _Richard W. Wieking_ | May 19, 2003 |

| This subpoena is issued on application of the United States of America KEVIN V. RYAN United States Attorney | ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER: AUSA Jeff Nedrow U.S. Attorney's Office, 280 S. First Street, Room 371 San Jose, CA  95113          (408)535-5045 SA Jeff Novitzky  - IRS CID  (408)817-6938 |

## Attachment to Subpoena

Washington Mutual Bank
Attn.:  Subpoena Processing Center


1.     Any and all records during the period from **September 1, 2002 through May 31, 2002,** referring to the following Washington Mutual account:

> Balco Laboratories Inc.
> Victor Conte Jr.
> 1520 Gilbreth Road
> Burlingame, CA  94010
> **Account Number: 179-192909-6**

This documentation shall include, by way of example, any and all of the following items:

2.     Account applications and signature cards, monthly and/or quarterly statements, deposit slips (front and back), deposited items (front and back), cancelled checks (front and back), debit and credit memos, documents relating to electronic/wire transfers or deposits and any correspondence relating to such accounts.

3.     Any and all records relating to cashier's checks purchased from September 1, 2002 through May 31, 2003, by the above mentioned individual and entity during the period from S through the present.

4.     Any and all records relating to safe deposit box rentals by the above mentioned individual and entity, including, but not limited to, rental contracts and entry records.



**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

| | |
|---|---|
| *280 South First Street, Room 371*<br>*San Jose, California 95113* | *(408) 535-5061*<br>*FAX:(408) 535-5081* |

December 22, 2003

Wells Fargo Bank
Attn: Subpoena Processing Center

> Re:    Grand Jury Investigation
>            Request for Non-Disclosure

Dear Sir or Madam:

Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

Very truly yours,

KEVIN V. RYAN
United States Attorney

JEFF NEDROW
Assistant United States Attorney

JN:sk
Enclosure
2002R01596

2002R01596
GJ-SF 03-1

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO:  Wells Fargo Bank
Attn: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:

☐ PERSON    ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court Federal Building & Courthouse 450 Golden Gate Avenue San Francisco, CA 94102 | As directed by the clerk of court |
| | DATE AND TIME |
| | January 16, 2004 at 1:00pm |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **RICHARD W. WIEKING** | |
| (By) Deputy Clerk *Richard W. Wieking* | December 22, 2003 |

| This subpoena is issued on application of the United States of America | ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER: |
|---|---|
| **KEVIN V. RYAN** United States Attorney | AUSA Jeff Nedrow U.S. Attorney's Office, 280 S. First Street, Room 371 San Jose, CA  95113     (408)535-5045 SA Jeff Novitzky - IRS (408)817-6938 |

## Attachment to Subpoena

Wells Fargo Bank
Attn.: Subpoena Processing Center

Please provide the following records relating to the following Wells Fargo Bank
Accounts:

      **ACCOUNT #1:**     Victor Conte Jr.
                              345 California Drive, #22
                              Burlingame, CA  94010
                              **Account Number: 0167-483981**

- All **monthly statements**, **deposit slips**, **deposited items**
  (front and back) and **cancelled checks** (front and back)
  from the time period May 1, 2003, through the present.
- All documents, including deposit slips and deposited items,
  relating to the following net deposits and dates for this
  account:

| Date | Deposit Amount |
|------|----------------|
| 4/6/2000 | $500 |
| 6/9/2000 | $400 |
| 11/16/2000 | $100 |
| 11/28/00 | $1,000 |
| 12/4/00 | $1,000 |
| 12/7/00 | $1,300 |
| 12/11/00 | $1,000 |
| 12/22/00 | $835.61 |
| 1/12/01 | $300 |
| 3/29/01 | $500 |
| 8/16/01 | $1,000 |
| 8/17/01 | $400 |
| 11/20/01 | $1,000 |
| 8/2/02 | $500 |
| 8/23/02 | $200 |
| 8/27/02 | $400 |
| 8/29/02 | $200 |
| 8/30/02 | $400 |
| 9/3/02 | $1000 |
| 9/6/02 | $400 |
| 9/6/02 | $200 |
| 9/10/02 | $200 |
| 9/12/02 | $200 |
| 9/13/02 | $300 |
| 9/17/02 | $500 |

| Date | Amount |
|---|---|
| 9/19/02 | $200 |
| 10/11/02 | $200 |
| 11/1/02 | $200 |
| 11/5/02 | $400 |
| 11/8/02 | $200 |
| 11/13/02 | $500 |
| 11/14/02 | $200 |
| 11/15/02 | $200 |
| 11/19/02 | $750 |
| 11/27/02 | $2000 |
| 11/29/02 | $1500 |
| 11/29/02 | $700 |
| 12/3/02 | $1500 |
| 12/4/02 | $2000 |
| 12/6/02 | $500 |
| 12/13/02 | $1000 |
| 12/19/02 | $800 |
| 12/20/02 | $630 |
| 1/3/03 | $1600 |
| 1/7/03 | $1000 |
| 1/14/03 | $1200 |
| 1/17/03 | $1000 |
| 1/24/03 | $280 |
| 3/7/03 | $500 |
| 3/26/03 | $8000 |
| 4/3/03 | $368 |
| 4/28/03 | $2500 |
| 5/7/03 | $1600 |

**ACCOUNT #2:**     Snac System Inc.
                    345 California Drive, #34
                    Burlingame, CA  94010
                    **Account Number: 0426-002556**

-     All **monthly statements, deposit slips, deposited items**
      (front and back) and **cancelled checks** (front and back)
      from the time period May 1, 2003, through the present.
-     All documents, including deposit slips and deposited items,
      relating to the following net deposits and dates for this
      account (**See Attachment 1**):
-     All documents, including cancelled checks (front and back)
      relating to the following checks paid from this account (**See
      Attachment 2):**

**ACCOUNT #3:**     Greg Anderson
                    Jane Landucci
                    **Account Number: 016-7499441**


-     All **monthly statements**, **deposit slips**, **deposited items**
      (front and back) and **cancelled checks** (front and back) for
      the time period from September 1, 2002 through the present.


**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

ل



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

280 South First Street, Room 371          (408) 535-5061
San Jose, California 95113               FAX:(408) 535-5081

December 22, 2003

Washington Mutual Bank
Attn: Subpoena Processing Center

       Re:    Grand Jury Investigation
                Request for Non-Disclosure

Dear Sir or Madam:

       Pursuant to an investigation being conducted by the Federal Grand Jury for the Northern District of California with regard to possible felony violations of the United States Code, it is requested that you furnish the information requested in the grand jury subpoena.

       In addition, we request that you not disclose the existence of this request and the production of records indefinitely. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law. Thank you very much for your assistance in this matter.

                     Very truly yours,

                     KEVIN V. RYAN
                     United States Attorney

                     JEFF NEDROW
                     Assistant United States Attorney

JN:sk
Enclosure
2002R01596

2002R01596
GJ-SF 03-1

AO 110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

# United States District Court

**NORTHERN** _____ **DISTRICT OF** **CALIFORNIA**

TO:  Washington Mutual Bank
Attn: Subpoena Processing Center

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

**SUBPOENA FOR:**

☐ PERSON   ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| United States District Court Federal Building & Courthouse 450 Golden Gate Avenue San Francisco, CA 94102 | As directed by the clerk of court |
| | DATE AND TIME |
| | January 16, 2003 at 1:00pm |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

SEE ATTACHED

**COMPLIANCE WITH THIS SUBPOENA WILL BE DEEMED SATISFACTORY WHEN YOU PROVIDE THE REQUIRED MATERIALS TO THE AGENT SERVING THIS SUBPOENA AND NO APPEARANCE WILL BE NECESSARY**

☐ Please see additional information on reverse

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| **RICHARD W. WIEKING** | |
| (By) Deputy Clerk | |
| Richard W. Wieking | December 22, 2003 |

| This subpoena is issued on application of the United States of America **KEVIN V. RYAN** United States Attorney | ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER: AUSA Jeff Nedrow U.S. Attorney's Office, 280 S. First Street, Room 371 San Jose, CA 95113   (408)535-5045 SA Jeff Novitzky - IRS (408)817-6938 |
|---|---|

*If not applicable, enter "none"

## Attachment to Subpoena

Washington Mutual Bank
Attn.: Subpoena Processing Center

1.     Any and all records during the period from 3/19/2003 through 12/31/2003t referring to and/or relating to accounts associated with:

**Greg F. Anderson**
**SSN: 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**

**\*\*Known Account:  4883036620**

This documentation shall include, by way of example, any and all of the following items:

2.     Account applications and signature cards, monthly and/or quarterly statements, deposit slips (front and back), deposited items (front and back), cancelled checks (front and back), debit and credit memos, documents relating to electronic/wire transfers or deposits and any correspondence relating to such accounts.

3.     Any and all records relating to cashier's checks purchased by the above mentioned individual and entity during the period from 1/1/2000 through the present.

4.     Any and all records relating to safe deposit box rentals by the above mentioned individual and entity, including, but not limited to, rental contracts and entry records.

**Please send all documentation to:**

**Special Agent Jeff Novitzky**
**Internal Revenue Service**
**Criminal Investigation Division**
**55 South Market Street, Suite 815**
**San Jose, CA  95113**
**(408) 817-6938**

RECEIVED

JUL  9 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  KEVIN V. RYAN (CASBN 118321)
   United States Attorney
2
   ROSS W. NADEL (CASBN 87940)
3  Chief, Criminal Division

4  JEFFREY D. NEDROW (CASBN 161299)
   CARTER M. STEWART (CASBN 196426)
5  Assistant United States Attorneys

6       280 South First Street
        San Jose, California 95113, Suite 371
7       Telephone: (408) 535-5045

8  Attorneys for Plaintiff

9
                    IN THE UNITED STATES DISTRICT COURT
10
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
   UNITED STATES OF AMERICA,          )     CR 04-0044-SI
12                                     )
            Plaintiff,                 )
13                                     )
            v.                         )     DECLARATION OF
14                                     )     JEFF NOVITZKY
   VICTOR CONTE, JR., et al.,          )
15                                     )
            Defendants.                )
16  _____)

17  I, Jeff Novitzky, state as follows:

18      1.  I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division

19  ("IRS-CID") assigned to the San Jose Post of Duty for the Oakland Field Office. I am assigned as the

20  case agent to the case of United States v. Conte, CR 04-0044 SI.

21      2.  Between October and December 2003, approximately 32 athletes testified before the grand

22  jury hearing this matter in San Francisco. I was personally involved in transporting many of the

23  witnesses to the grand jury and spoke to some of the witnesses before and after the grand jury

24  proceedings.

25      3.  As the case agent for the Balco case, I personally received copies of the original grand jury

26  transcripts in this matter. I received these copies in person from AUSA Jeff Nedrow or his legal

1  assistant, Susan Kreider. I stored, and continue to store, my copies of the transcripts in a closed and
2  lockable file cabinet located within my private workspace area inside IRS-CID's secured San Jose
3  Post of Duty office. This file cabinet is closed when I am not working with the material, and routinely
4  locked when I am not in the office. I have not told other people within the office where the transcripts
5  are located, and have never seen or authorized any other IRS employee to remove transcripts from
6  this file cabinet.

7        4. I have distributed some of the grand jury transcripts to one other IRS agent working with
8  me in investigating this case, Special Agent Erwin Rogers. I have also asked Susana Mendoza, a Tax
9  Fraud Investigative Aid with our office, to assist at times in preparing and copying grand jury
10  transcripts for distribution and use in connection with the investigation in this case. Other than Agent
11  Rogers and TFIA Mendoza, I am not aware of any other IRS employee directly handling and
12  reviewing the grand jury transcripts in this matter.

13        5. Following the indictment in this case, between March and April 2004, I gave a complete
14  set of the grand jury transcripts to TFIA Mendoza and asked her to make a copy of them in order to
15  provide a complete set of the transcripts to AUSA Haywood Gilliam, another AUSA assigned to work
16  on this matter. Once the copies were completed, she returned to me my set of the transcripts and the
17  newly copied set of transcripts. I then gave the copied set of transcripts to Agent Rogers. I
18  understand that Agent Rogers personally delivered this set of the transcripts to AUSA Gilliam in San
19  Francisco. Other than the set given to AUSA Gilliam and my distribution of some transcripts to
20  Agent Rogers, neither I nor anyone else at the IRS has distributed copies of the grand jury transcripts
21  which I received from the U.S. Attorney's Office.

22        6. At the request of the U.S. Attorney's Office, I conducted an internal review of the handling
23  of the grand jury transcripts in this case. I have personally spoken with Agent Rogers and TFIA
24  Mendoza about their handling of the grand jury transcripts in this matter. I have requested and
25  received declarations from each of them. Both of these individuals have stated in their sworn
26  declarations that they never disclosed grand jury transcripts in this case to an unauthorized person,
   including specifically any member of the media.

        7. As a part of my training as a Special Agent with the Internal Revenue Service, Criminal

1   Investigation Division, I understand that pursuant to Fed.R.Crim.P 6(e), it is imperative to maintain
2   grand jury transcripts in a secure manner to ensure their secrecy. I received training in the importance
3   of securing grand jury material when I first started work as a Special Agent. I am further aware that
4   there is a protective order in this case, and I am familiar with the explicit additional protections it has
5   imposed regarding the handling of grand jury transcripts in this case.

6       8. Since receiving the copies of the grand jury transcripts in this case, I have maintained the
7   transcripts in a secure manner, and I have only reviewed and used them in a manner consistent with
8   Rule 6(e) and the protective order, e.g. for legitimate law enforcement investigative and prosecutorial
9   purposes. I have never given copies of any of the Balco grand jury transcripts to any person who did
10  not have the legal right or authorization to possess or review them, nor have I disclosed or discussed
11  the information contained within the transcripts with others without legal authorization. I have not
12  caused another person to distribute the transcripts to persons who did not have the legal right to
13  possess or review them. I have never given any of the transcripts to a media representative, nor have
14  I disclosed any of the information contained within the transcripts to a media representative.

15      9. I am aware of the apparent unauthorized disclosure of the grand jury transcript of Tim
16  Montgomery to reporters with the San Francisco Chronicle, a disclosure which resulted in a story in
17  the San Francisco Chronicle on June 24, 2004. I never spoke to these reporters (or any other
18  reporters) about Tim Montgomery or his grand jury testimony, and did not provide either of them, or
19  any employee with the San Francisco Chronicle, with the grand jury transcript of Tim Montgomery
20  or with information contained within the Tim Montgomery transcript.

21      10. I am aware that Iran White, a special agent with the California Bureau of Narcotics
22  Enforcement, was the subject of an April 2004 magazine article and interview. However, that
23  interview was unauthorized and occurred after Agent White was no longer working on the case.
24  Agent White had a very limited role in this case and never had access to any grand jury information.
25  He is no longer involved in the ongoing investigation and prosecution of the case.

26      11. Based upon my discussions with the government attorneys, agents, and employees
    involved in this case, I have concluded that there is no evidence that the government disclosed the

3

1 │ Montgomery grand jury transcript to the Chronicle, or that the government has disclosed any other

2 │ items to the media in violation of Rule 6(e) or the protective order signed in this case.

3 │     I swear under penalty of perjury that the foregoing is true and correct.

4 │

5 │ DATED:

6 │                                      JEFF NOVITZKY
Special Agent, IRS

7 │

8 │

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

4